543 A.2d 1202

WILCO ELECTRONIC SYSTEMS, INC., Appellant,

v.

Gary DAVIS and Grande Associates and Ray Cawley, Ind. and t/a Bucks County Cablevision Waterford Associates and MGM Enterprises, Inc. Pennsylvania Cable Television Association, Appellee.

Raymond J. CAWLEY, t/a Bucks County Cablevision, Appellee,

v.

Ronald GIANCRISTOFARO and Anthony Giancristofaro, t/a Grande Associates and Colonial Estates and Wilco Electronic Systems, Inc., Waterford Associates and MGM Enterprises, Inc., Pennsylvania Cable Television Association, Appellants.

Superior Court of Pennsylvania.

Argued March 24, 1988.

Filed June 8, 1988.

Alvin Freiberg, Philadelphia, for appellants.

Randolph A. Scott, Warrington, for appellees.

Before CAVANAUGH, OLSZEWSKI and MELINSON, JJ.

CAVANAUGH, Judge:

The two principal issues involved in this case are (1) whether a contract between the owner of a rental apartment complex and the provider of television services which grants the television company the right to provide non-cable pay television services and restricts anyone else from providing "any pay TV system, cable or otherwise" to the tenants is unenforceable as violative of the First Amendment to the United States Constitution and (2) whether the contract is unenforceable as being in violation of the Landlord and Tenants Act, 68 Pa.S. § 250.554.[1]

1. The contract between the owner of the real estate involved and Wilco provided in pertinent part:

1. Owner does hereby grant to Wilco the right to install a non-cable pay TV system in premises at WARRINGTON VALLEY APARTMENTS 1700 Street Road, Warrington, Pennsylvania together with all wiring, connections, fixtures, accessories, and all other items, parts or things in connection thereto, and to maintain and operate same exclusively within said premises for a term of ten (10) years commencing the 1st day of January, 1980, and ending the last day of December, 1989. Said construction and installation shall be performed in a neat workmanlike manner. Further, except as herein provided, no other party or entity shall be allowed by Owner to use, repair, service, install, or otherwise be involved with any pay TV system, cable or otherwise, in the said premises. Further, during such term Wilco shall have the exclusive right to provide a pay TV system to the tenants of said premises at a charge to be determined by Wilco and Owner.

This case involves two appeals in cases which were consolidated in this court as well as in the court below. The background is quite complex and an understanding of the facts is necessary to place the issues in focus. The original Plaintiff, Wilco Electronic Systems, Inc., which is referred to in this opinion as "Wilco", and is an appellant herein, is a Pennsylvania corporation engaged in the business of selling, installing and operating cable and non-cable television. On December 17, 1979 Wilco entered into a contract with the then owner of a property now known as "Colonial Estates", which is an apartment complex containing some 194 units, to install a pay television system together with the wiring, connections, fixtures, accessories and the like.[2] The contract granted an exclusive right to Wilco to operate the television system within the premises for a period of ten years commencing on January 1, 1980 and ending December 31, 1989. The agreement also specifically prohibited any other party from using or installing a cable television system on the premises. The agreement gave Wilco an exclusive right to provide pay television to the tenants at Colonial Estates at charges to be determined between Wilco and the owner of the premises.

Apparently, the contract was performed by the parties in interest without incident until September, 1985. At that time it was ascertained that Bucks County Cable Television, an appellee herein, referred to in this opinion as BCC, had employees on the grounds of Colonial Estates who were digging trenches to install cable television and had cut

**2.** The court below made the following findings of fact:

1. Wilco Electronic Systems, Inc. (Wilco) is a Pennsylvania corporation engaged in the business of selling, installing and operating cable and non-cable television and other electronic systems.

2. Colonial Estates is a multifamily apartment complex comprised of nineteen buildings and containing 192 dwelling units available to tenants. It is located at 1700 Street Road, Warrington, Bucks County, Pennsylvania.

3. Ronald Giancristofaro and Anthony Giancristofaro are adult individuals doing business as Grande Associates and are the real owners in interest of Colonial Estates.

4. Raymond J. Cawley is an adult individual and general partner of the business known as Bucks County Cablevision.

Wilco's cables on the grounds of Colonial Estates. BCC was also making cable installations in apartments within the complex which desired such cable television.

In late 1985 Wilco commenced an action in equity seeking a preliminary injunction against BCC and the then owner of Colonial Estates. Subsequently, Raymond J. Cawley, individually and trading as Bucks County Cablevision (BCC) commenced an action against Wilco and individuals trading and doing business as Colonial Estates. BCC sought an injunction against Wilco and Colonial Estates prohibiting them from restricting the plaintiff's access to Colonial Estates "for the purpose of providing cable television services to the residents of Colonial Estates."

The actions commenced by Wilco and BCC were consolidated for hearing which was held before Biester, J. The court entered an Adjudication and Decree Nisi including findings of fact and conclusions of law and found in favor of BCC. Wilco's motion for post-trial relief was denied and it has appealed to this court.[3]

██ The first issue for our consideration is whether the court erred in finding that the contract between Wilco and Colonial Estates which gave Wilco the exclusive right to provide television services to the residents of Colonial Estates was unenforceable as violative of BCC's rights under the First Amendment to the Constitution of the United States. We find that the court below erred in its determination that enforcement of the restrictive covenants in the

3. The decree nisi of January 13, 1987 provided in pertinent part:
   It is hereby Ordered, Directed and Decreed that the Preliminary Injunction sought by Wilco Electronic Systems, Inc. is denied, and that the Preliminary Injunction sought by Bucks County Cablevision is also denied. Bucks County Cablevision is permitted to provide cable services to its customers at Colonial Estates provided they compensate the owners of Colonial Estates for any actual damages that may be caused in providing such services. The Court will supervise, if necessary, the setting of compensation for damages as they may occur. It is further ordered that Wilco Electronic System, Inc.'s claim for equitable relief for damages is granted and that Bucks County Cablevision shall pay to Wilco Electronic Systems the sum of One Thousand Four Hundred Fifty Three Dollars and Ninety five cents ($1,453.95).

contract between Wilco and Colonial Estates would constitute state action in violation of The First Amendment of the United States Constitution.[4] The court below relied on *Shelly v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948) which reversed the state court's enforcement of a racially restrictive covenant. In our opinion, *Shelly v. Kraemer, supra,* is not applicable to this case, as no state action was involved in the matter before us. In *Parks v. "Mr..Ford"*, 556 F.2d 132, 136 N.6a (3rd Cir.1977) the court noted a distinction between the situation where state action is deemed to exist for constitutional purposes and when it does not so exist. The court held that where a state court enforces the right of private persons to take actions which are permitted but not compelled by law, there is no state action for constitutional purposes in the absence of a finding that racial discrimination is involved as existed in the *Shelly* case *supra.* In *Parks* it was held that possession of an automobile under the common law rule which gives a repairman a possessory lien on vehicles he repaired did not constitute state action. It is evident that in the case before us there is no racial discrimination and enforcement of the contract between Wilco and Colonial Estates would not involve state action in the constitutional sense.

In *Luria Brothers and Company v. Allen,* 672 F.2d 347 (3rd Cir.1982), the Court of Appeals held that judicial enforcement of a contract cannot convert an otherwise private matter into state action. The court stated at 672 F.2d 354:

> If the mere denial [or grant] of judicial relief is considered sufficient encouragement to make the State responsible for those private acts, all private deprivations of property would be converted into public acts whenever the State, for whatever reason, denies [or grants] relief sought by the putative property owner.

4. The First Amendment to the United States Constitution provides: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The court quoted from *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 at 165, 98 S.Ct. 1729 at 1738, 56 L.Ed.2d 185 (1978). Under the Federal Constitution, the First Amendment cannot be abridged by individual property owners. The action complained of must stem from state action, not from purely private conduct. *Flagg Bros., Inc. v. Brooks, supra.* See also *Hudgens v. NLRB*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976).

The court below found that BCC did extensive work at Colonial Estates' property which included the laying of approximately 3000 feet of feeder lines in order to wire several of the buildings. The feeder lines were laid by using a vibratory plough which vibrates the soil and feeds the lines down a chute into the ground. BCC also installed wiring on the interior of 9 of the 19 buildings at the Colonial Estates apartment complex which ran into the individual apartments. In connection with the interior wiring in 8 of the 9 wired buildings, BCC installed a piece of equipment called an Intonet System which is a remote location for the adjustable portion of the cable TV converter. The Intonet Systems were installed in the laundry rooms of the Colonial Estates buildings. During the course of the underground installation by BCC, Wilco's underground wires were cut in several places.

In order for the enforcement of the contract between Colonial Estates and Wilco to violate the First Amendment, the state would have to be involved in some way in the action of the landowner in permitting Wilco to have the exclusive right to maintain cables and related activities on its property and to exclude other cable television companies. In *Western Pennsylvania Socialist Workers v. Connecticut General Life Insurance Co.*, 335 Pa.Super. 493, 485 A.2d 1 (1984), we held that the First Amendment did not grant the right to a politically oriented group to use a privately owned shopping center to disseminate information and collect signatures on a nominating petition. We held that in the absence of state action, the acts of purely

private actors do not violate the federal constitution. We stated at 335 Pa.Super. 506, 485 A.2d 7–8:

There are three instances in which a supposedly 'private' actor has been held subject to federal constitutional restraints. The tests, adopted by the federal courts, although not binding upon us, are nevertheless helpful and, it may be added, consistent with Pennsylvania law. They have been discussed at length in recent federal decisions and hold that federal constitutional restraints will be applied where there is a 'symbiotic relationship' between a private actor and the government; where there is a sufficient 'nexus' between the actor and the government; and where the actor has assumed a 'public function' so as to occupy the position of an arm of the state for constitutional purposes.

Since none of these circumstances applied, the court below properly refused to enjoin the property owner from excluding the plaintiffs from its shopping center. In *Crozer Chester Medical Center v. May*, 352 Pa.Super. 51, 506 A.2d 1377 (1986), we upheld an injunction against protestors who were prohibited from entering the private property of a hospital. We again noted that the First and Fourteenth Amendments' are limitations on state action and not on actions by the owners of private property used only for private purposes, citing *Central Hardware Company v. National Labor Relations Board*, 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972). Relying on *Western Pennsylvania Socialist Workers, supra*, we determined that there was neither a symbiotic relationship nor a nexus between the hospital and state government. Nor did the hospital assume a public function so as to become the arm of the state for constitutional purposes.

In carrying out its cable television activities, BCC was clearly a trespasser on the property of Colonial Estates unless it was clothed with the protection of freedom of speech under the First Amendment to the United States Constitution. BCC states that "The essence of Bucks County Cablevision's position is that it is a First Amendment

speaker no less than newspapers, magazines and other pamphleteers."[5] It argues that *Los Angeles v. Preferred Communications, Inc.*, 476 U.S. 488, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986) "clearly indicates that First Amendment interests are applicable to the activities of cable television companies." That case involved a municipality's refusal to grant a franchise to a cable television company on the grounds that there was lack of space on public utility structures and that to do so would result in disruption of public rights of way. The district court dismissed the free speech contention. The Court of Appeals for the 9th Circuit reversed and remanded for further proceedings. The United States Supreme Court affirmed the Court of Appeals. While the Supreme Court noted that the complainant's factual allegations implicated protected speech, the inquiry did not end there. The court stated at 476 U.S. at 495, 106 S.Ct. at 2038, 90 L.Ed.2d 487–8:

Moreover, where speech and conduct are joined in a single course of action, the First Amendment values must be balanced against competing societal interests. See, e.g., *Members of the City Council v. Taxpayers for Vincent, supra,* [466 U.S. 789] at 805–807, 80 LEd2d 772, 104 SCt 2118 [at 2128–2130]; *United States v. O'Brien,* 391 US 367, 376–377, 20 LEd2d 672, 88 SCt 1673 (1968). We do not think however, that it is desirable to express any more detailed views on the proper resolution of the First Amendment question raised by the respondent's complaint and the City's responses to it without a fuller development of the disputed issues in the case. We think that we may know more than we know now about how the constitutional issues should be resolved when we know more about the present uses of the public utility poles and rights-of-way and how respondent proposes to install and maintain its facilities on them.

**5.** In the amicus curiae brief filed by the Pennsylvania Cable Television Association on behalf of BCC, it acknowledges that Colonial Estates "is entitled to exclude all cable television providers", but argues that the property owner could not permit Wilco to conduct television operations and exclude other cable companies.

This case clearly does not go so far as to support BCC's claim of a right to enter private property to install its cable televisions where the owner of the property objects and has entered a contract which excludes any other company from providing services. The Supreme Court's decision goes to the power of a municipality to refuse to franchise a cable television company, an issue with which we are not concerned.[6]

The court below found *Loretto v. Teleprompter CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) not applicable to the facts before us. While we agree with this conclusion, the case is nevertheless instructive. In *Loretto, supra,* state law required a landlord to allow cable television on his land. The United States Supreme Court held that this constituted a taking of property which required compensation under the Fifth and Fourteenth Amendments of the Constitution.[7] In the instant case,

---

**6.** Similarly, we are not concerned with the issue of whether a governmental unit may grant an exclusive right to a cable television company to market cable television. It is not clear that cable television is entitled to co-extensive protection with the press media. In *Community Communications v. City of Boulder,* 660 F.2d 1370 (10th Cir.1981), the Court of Appeals held that on the facts before it, cable television was more analogous to broadcasting than to newspapers and that a natural monopoly situation may justify an exclusive franchise scheme. The court noted in *Group W. Cable, Inc. v. City of Santa Cruz,* 669 F.Supp. 954, 961 (N.D.Cal.1987): "[t]he precise degree of First Amendment protection due cable television, a relatively recent addition to the media, is in doubt." The Court of Appeals dealt with the grant of a franchise by city government in *Central Telecommunications v. TCI Cablevision,* 800 F.2d 711, 716 (8th Cir.1986) stating:

> We recognize that there are profound first amendment implications inherent in the regulation of cable operators. Changes in technology such as were presented in the *Omega* case [*Omega Satellite Products v. City of Indianapolis,* 694 F.2d 119 (7th Cir. 1982) ] may require a different approach to exclusive franchising schemes. We are also aware of the difficulties inherent in the regulation of cable television programming.

**7.** In *Loretto, supra,* the Supreme Court pointed out a constitutional distinction between a permanent occupation and a temporary physical invasion. Teleprompter's cable installation constituted a taking in the traditional sense as it involved a direct physical attachment of plates, boxes, and wires on the building and completely occupied some space on the roof and exterior walls. The court distinguished this from the factual situation in *PruneYard Shopping Center v.*

there was no statute that permitted BCC to enter private property without the consent of the owner, and in violation of a contract giving exclusive rights to another party. However, in the absence of a statute such as the one involved in *Loretto*, BCC had no right to enter the private property of Colonial Estates, even if it were willing to compensate the owners for confiscation of its property.

A case analogous to our own is *Cox Cable San Diego, Inc. v. Bookspan*, California Court of Appeals, 195 Cal. App.3d 22, 240 Cal.Rptr. 407 (1987). The Cox Cable Company sought an injunction to allow it to reconnect subscribers at Woodlawn Garden Apartments. The owner of the apartments had disconnected the Cox Cable television system at his apartments in favor of a satellite system called Ultronics, Inc. The motion for preliminary injunction was denied and the Superior Court affirmed. Cox Cable argued unsuccessfully that the owner could not exclude it in favor of Ultronics without violating First Amendment rights. The court rejected Cox's argument that the apartment complex had the attributes of a quasi municipality and stated at slip opinion, page 3:

> The cases on which Cox relies all involve, at most, transitory trespasses by [leafleteers] and speakers. None involve the sort of permanent physical occupation sought here. In none of the cited cases were the individuals seeking to erect a permanent structure. Those cases would be more similar to Cox's situation if, in those cases, the individuals were given the right to build a permanent kiosk to disseminate information or to erect a permanent stage with attached amplification equipment for speeches. Cox's requested right of access here is analogous to a publisher seeking a right to cut slots in apartment doors so it can deliver its newspapers directly. The First Amendment has yet to be extended so far.

. . . . .

*Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980), in which the court upheld a state constitutional requirement that shopping center owners permit individuals access to their shopping centers to speak and distribute pamphlets. The court noted that the invasion for this purpose was limited in nature.

Here we have involved a private apartment complex. The intrusion here does dilute the owner's property rights. As the Supreme Court noted in *Loretto v. Telepromoter Manhattan CATV Corp.*, *supra*, 458 U.S. at page 436 [102 S.Ct. at page 3176], where an owner is compelled to allow a cable company to attach its equipment to his or her building, 'even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space by a stranger will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property.'

*Cable Investments, Inc. v. Woolley*, 680 F.Supp. 174 (M.D.Pa.1987), involved a case in which the plaintiff had a non-exclusive franchise to provide cable television service in York County. The owner of the apartment complex to which plaintiff had provided cable television service told plaintiff that it could no longer provide such service. The owner threatened the company with civil and criminal penalties if it entered the premises. The court held that there were no First Amendment rights involved as there was no state action. It also opined that the court in *Wilco Electronics Systems, Inc. v. Davis*, *supra*, had misapplied *Shelley v. Kraemer*, *supra*.

We hold that the contract between the owner of Colonial Estates, a rental apartment complex and Wilco, which granted Wilco the exclusive right to provide non-cable television service to the apartment, and which excluded other cable television companies, is enforceable and does not violate any rights under the First Amendment to the United States Constitution.

■ The second issue which we must decide is whether the contract between Colonial Estates and Wilco was unenforceable under the Landlord and Tenants Act, 68 Pa.S. § 250.554 which provides in pertinent part:

§ 250.554. Tenant's rights

The tenant shall have a right to invite to his apartment or dwelling unit such employees, business visitors, trades-

men, deliverymen, suppliers of goods and services, and the like as he wishes so long as his obligations as a tenant under this article are observed. The tenant also shall have the right to invite to his apartment or dwelling unit, for a reasonable period of time, such social guest, family or visitors as he wishes so long as his obligations as a tenant under this article are observed. These rights may not be waived by any provisions of a written rental agreement and the landlord and/or owner may not charge any fee, service charge or additional rent to the tenant for exercising his rights under this act.

It is the intent of this article to insure that the landlord may in no way restrict the tenant's right to purchase goods, services and the like from a source of the tenant's choosing and as a consequence any provision in a written agreement attempting to limit this right shall be void and unenforceable in the courts of this Commonwealth.

The court below held that the contract was unenforceable on the basis that the tenant may choose the services that may come into his home. "For example, a tenant may choose any telephone company he likes to provide telephone service to his apartment." *Wilco Electronic Systems, Inc. v. Davis*, 50 Bucks County L.R. 243, 247 (1987). Further, the court reasoned that a landlord could not designate A.T. & T. as the official telephone company of the apartment complex and preclude tenants from using Sprint or MCI. In *T.C. Harrisburg v. Sammons Communications*, 107 Dauphin C.R. 411 (1987), opinion by Dowling, J. the court did not find the reasoning of Biester, J. persuasive and held that § 250.554 does not give a cable television company the right to have its equipment installed on private property and to provide cable services to apartment dwellers without the property owner's consent. In discussing the reasoning of the court in *Wilco Electronic Systems, Inc. v. Davis*, *supra*, that a landlord may not restrict the type of telephone service that a tenant desires, the court in *Sammons*, *supra*, stated at page 417: "Yet to carry this reasoning a step forward, would a tenant who prefers gas heat over

electrical have the right to insist, against the landlord's objection, on the installation of the former?" The Court of Common Pleas of York County in *Weaver v. Craig Dallameyer*, 101 York L.R. 110 (1987), opinion by Erb, P.J., held that the tenants of a mobile home park were not authorized to request a cable television company to come onto the landlord's property under § 250.554 where the providing of cable television required a permanent physical occupation of the landlord's private property. The court in *Weaver, supra*, followed the decision of *T.C. Harrisburg Company and T.C. Harrisburg East Company v. Sammons Communication of Pennsylvania, supra*. See also *Cable Investments, Inc. v. Woolley, supra*, in which the District Court held that the tenants of an apartment complex do not have the right to purchase cable television of their choice under § 250.554.

■ We hold that the Landlord and Tenants Act does not grant to the operators of cable television services the right to install their cables and other equipment on private property without the consent of the owners. Although, under the Act, the landlord may not restrict a tenant's right to "goods, services and the like", this does not encompass cable television. The very nature of cable television involves tangible equipment which must be permanently installed and may result in substantial damage to property as it did in this case.

■ Another issue raised by Wilco on appeal is that the court below erred in not finding that counsel for BCC violated the code of professional responsibility by representing BCC in this case. The basis for this contention is that BCC had entered a contract with the Board of Supervisors of Warrington Township which was signed by Randolph A. Scott, Esq., as a Supervisor, and he was also counsel for BCC in the trial below. The contract gave BCC non-exclusive permission to provide cable television service to residents of Warrington Township. Mr. Scott was also a Township Supervisor at the time of the trial. Shortly after the trial commenced, Mr. Scott told the court and counsel

involved in the case that he had been reappointed as a Supervisor of Warrington Township about two weeks previously. Counsel for Wilco felt that this was a serious problem. The court stated:

THE COURT: I'm going to have to hear some more of this case, and we'll see what it looks like. I will say to Mr. Scott, if it looks to me as though it's inappropriate, I'll tell you. And I'll expect as an officer of the court we'll deal with that problem at the time.

MR. SCOTT: Certainly would.

Counsel for Wilco objected to Mr. Scott's participation as counsel for BCC under DR 5-101 of the Code of Professional Responsibility which provided at the times relevant to this case that "a lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness." [8] Counsel for Wilco read this provision to the court and stated that he felt that he was at a disadvantage in trying the case where his opponent was chairman of the Board of Supervisors which signed the contract. The court inquired as to whether counsel for Wilco intended to call Mr. Scott as a witness and he replied that he did not know. In fact, Mr. Scott was not called by either side as a witness and did not testify.[9] We find no error by the court below in

---

**8.** On appeal, the appellant raises for the first time other canons of the Code of Professional Conduct, but these issues are waived, as they were not raised in the court below. In civil cases as well as criminal, issues not raised at the trial stage will not be considered on appellate review. *DeMarco v. Jones & Laughlin Steel Corp.*, 513 Pa. 526, 522 A.2d 26 (1987); *Glomb v. Glomb*, 366 Pa.Super. 206, 530 A.2d 1362 (1987). See also Pa.R.A.P. 302.

**9.** With respect to Mr. Scott testifying, counsel for Wilco stated:

I then raised the fact that I believe that he will become an important witness, which I still believe. And it is my understanding under the Code of Professional Responsibility that an attorney who will be a witness should not try the case, nor should his office.

Now, of course, I couldn't raise it by preliminary objection because I didn't understand that as a problem until I got the contract, which was after I did my preliminary objections. However, it is my belief, and still is, and I'm not suggesting for a moment any impropriety on their part, and I don't want the Court to think that, but as I understand the Canons of Professional Ethics when an

allowing Mr. Scott to represent BCC at trial. He did not testify as a witness and there was no need for him to be disqualified as counsel.

One final matter remains for our consideration. The court below found that Wilco had sustained damages in the amount of $1,453.95 as a result of BCC's action in coming onto the property of Colonial Estates and cutting some of Wilco's cables. We find that the award was justified by the evidence and sustain that portion of the final decree.

The decree is affirmed as to the award of damages. While a court must exercise its discretion in granting a preliminary injunction, the refusal to grant such an injunction will be reversed where the court has made a manifest error of law. *Buttonwood Farms, Inc. v. Carson*, 329 Pa.Super. 312, 478 A.2d 484 (1984). Accordingly, the decree is reversed as to the denial of the grant of a preliminary injunction in favor of Wilco and against BCC, and such preliminary injunction is granted. The decree is affirmed in its denial of a preliminary injunction in favor of BCC. The case is remanded for the entry of a permanent injunction in favor of Wilco in conformity with this opinion. This court relinquishes jurisdiction.

> attorney is potentially or actually an important witness, which I believe would be the case here, at least in their action, which they're also raising as defense to their—the contract here also raising as a defense to our action, that under those circumstances Mr. Scott and his office should not be representing this party with whom he contracted on behalf of the township. And now that becomes one of the allegedly vital issues of the case.