Paul S. WEINBERG, General Partner, t/a Hill House, Appellant,

v.

COMCAST CABLEVISION
OF PHILADELPHIA,
L.P., Appellee.

Superior Court of Pennsylvania.

Argued Oct. 5, 1999.
Filed Aug. 30, 2000.

Steven M. Coren, Philadelphia, for appellant.

David E. Landau, Philadelphia, for appellee.

BEFORE: DEL SOLE, KELLY, and HUDOCK, JJ.

KELLY, J.:

¶ 1 Appellant, Paul S. Weinberg, General Partner trading as Hill House ("Hill House"), asks us to reverse the order and judgment of the Philadelphia Court of Common Pleas, confirming an arbitration award in favor of Appellee, Comcast Cablevision of Philadelphia, L.P. ("Comcast"). We hold that the trial court properly confirmed the arbitrator's award in favor of Comcast. Accordingly, we affirm.

¶ 2 The relevant facts and procedural history of this case are as follows. Hill House is a multiple dwelling apartment building in Philadelphia. Hill House contracts with ACS Enterprises to provide cable television programming to its tenants. In return, ACS pays Hill House a monthly commission of five percent (5%) of ACS's gross monthly cable revenues generated from Hill House tenants. In 1997, five (5) of Hill House's one hundred and eighty-nine (189) tenants requested cable service from Comcast, another cable television services provider in Philadelphia.

¶ 3 On January 27, 1998, Comcast sent Hill House a notice of intention to provide the requested cable television service, pursuant to the Tenants' Right to Cable Television Act ("Act").[1] Comcast and Hill House were unable to reach an amicable agreement regarding installation within the time provided in the Act. Thus, on March 30, 1998, Comcast formally requested arbitration. *See* Section 250.506–B (b)(2) (providing for arbitration upon formal request); Section 250.506–B (b)(3), (4) (outlining process for arbitration proceedings and appeals). The American Arbitration Association appointed an arbitrator. An arbitration hearing occurred on November 10, 1998.[2] Following briefing by counsel, the arbitrator entered an award permitting Comcast to install its cable ser-

---

1. 68 P.S. §§ 250.501–B to 250.510–B.

2. By letter dated September 2, 1998, the arbitrator outlined for the parties certain discovery arrangements established during their administrative conference. The letter from the arbitrator to the parties makes clear that Hill House **was** afforded an opportunity to take discovery on disputed issues of fact, contrary to Hill House's assertion in its statement of facts. (*See* Comcast's Opposition to Hill House's Petition to Vacate Arbitration Award, Exhibit D; Supplemental R.R. at 89b–90b).

vices at Hill House. In addition, the arbitrator ordered Comcast to pay Hill House the sum of $1.00 for the .use of its property. The arbitrator also directed Hill House to pay one-half of the arbitration costs, as prescribed in Section 250.506–B (b)(4). The arbitrator's award was dated December 7, 1998.

¶ 4 On January 6, 1999, Hill House filed a petition to vacate or, in the alternative, to modify the arbitration award in the Philadelphia County Court of Common Pleas, and a memorandum of law in support of the petition. Comcast filed its answer on February 5, 1999. On February 12, 1999, the trial court issued an order confirming the arbitration award. The February 12, 1999 order confirming the arbitration award was docketed on February 25, 1999. Hill House filed an appeal on March 3, 1999. Judgment on the court's February 12, 1999 order was docketed on March 26, 1999.[3]

¶ 5 On appeal, Hill House raises the following issues for our review:

1. DOES THE TENANTS' RIGHT TO CABLE TELEVISION ACT, 68 P.S. § 250.504–B, *ET SEQ.* (THE "ACT") EFFECT A "TAKING" OF [HILL HOUSE]'S PROPERTY THAT MUST PASS CONSTITUTIONAL MUSTER?

2. IF THE ACT EFFECTS A TAKING, DOES IT INFRINGE ON [HILL HOUSE]'S CONSTITUTIONAL RIGHT AGAINST DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS AND JUST COMPENSATION?

3. DID [COMCAST] AND THE ARBITRATOR FAIL TO FOLLOW PROPER PROCEDURES UNDER THE ACT TO INVOKE ARBITRATION AND TO SUSTAIN THE ARBITRATION AWARD?

(Hill House's Brief at 1).

¶ 6 Preliminarily, we note, in an action involving a constitutional challenge to a statute, in which the Commonwealth is not a party, failure to provide notice to the Pennsylvania Attorney General constitutes waiver of the constitutional issue. *See* Pa. R.C.P. 235. Hill House has complied with the notice requirements of Rule 235. Accordingly, we will proceed to examine the merits of the issues raised.

¶ 7 Review of a statute's constitutionality is deferential. *Middleton/DPW v. Robinson*, 728 A.2d 368, 373 (Pa.Super.1999). "An enactment of the General Assembly enjoys a strong presumption of constitutionality." *Id.*; 1 Pa.C.S.A. § 1922(3). In addition, "for an act to be declared unconstitutional, the challenging party must prove the act 'clearly, palpably, and plainly' violates the constitution." *Commonwealth v. Smith*, 732 A.2d 1226, 1235 (Pa.Super.1999) (citing *Commonwealth v. Barud*, 545 Pa. 297, 304, 681 A.2d 162, 165 (1996)).

¶ 8 In its first issue, Hill House argues that the Act effects a taking, as it requires landlords to grant access to their properties to the cable operator of their tenants' choice. Specifically, Hill House claims that the Act effects a taking because the installation of Comcast's cable equipment will result in a permanent occupation of a portion of the Hill House property. We agree.

¶ 9 In *Loretto v. Teleprompter Manhattan CATV Corp. et al.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), the United States Supreme Court held that a state statute requiring a landlord to permit cable television to be installed on private property effects a taking. *Id.* As long as the statute provides for due process and just compensation, the landlord must allow the provider to install the equipment. *Id.*

¶ 10 Prior to 1990, the Pennsylvania Landlord and Tenants Act, 68 P.S.

---

3. *See generally McCormick v. Northeastern Bank of Pennsylvania*, 522 Pa. 251, 254 n. 1, 561 A.2d 328, 330 n. 1 (1989); Pa.R.A.P. 905(a) (allowing review of technically premature appeal, where final judgment entered at time of ultimate review).

§§ 250.101–250.512, did not grant cable television operators the right to install their service equipment on private property, such as apartment buildings, without the owner's consent. *See Wilco Electronic Systems v. Davis*, 375 Pa.Super. 109, 543 A.2d 1202, 1207 (1988), *appeal denied*, 520 Pa. 612, 554 A.2d 505 (1988). The *Wilco* Court held that *Loretto* was not applicable in this jurisdiction, because there was no statute in Pennsylvania allowing a cable company to enter private property and install its equipment without the owner's consent. *Wilco, supra.*

¶ 11 One year after the *Wilco* decision, the Pennsylvania General Assembly amended the Landlord and Tenants' Act to include Article V–B, Tenants' Right to Cable Television, 68 P.S. §§ 250.501–B 250.510–B. The amended Act states that landlords must allow the cable-company of their tenants' choice to install its equipment on the landlords' property. The Act provides in pertinent part:

A landlord may not discriminate in rental or other charges between tenants who subscribe to the services of a CATV system and those who do not. The landlord may, however, require reasonable compensation in exchange for a permanent taking of his property resulting from the installation of CATV system facilities within and upon his multiple dwelling premises, to be paid by an operator. The compensation shall be determined in accordance with this article.

68 P.S. § 250.502–B.

■ ¶ 12 " 'Eminent domain' is the power of the government to take private property for public use." *Balent v. City of Wilkes–Barre*, 542 Pa. 555, 565, 669 A.2d 309, 314 (1995). "A taking of property occurs whenever the entity clothed with the power of eminent domain substantially deprives an owner of his property." *Miller and Son Paving, Inc. v. Plumstead Township, Bucks County*, 552 Pa. 652, 656, 717 A.2d 483, 485 (1998), *cert. denied*, 525 U.S. 1121, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999).

■ ¶ 13 As the United States Supreme Court explained in *Loretto, supra*, a statute that authorizes a permanent physical occupation of private property is a taking, regardless of the public interests that are served. *Id.* at 441, 102 S.Ct. at 3179, 73 L.Ed.2d at 886. Thus, a statute that compels a landlord to allow a cable company to install its equipment in the landlord's building constitutes a taking under the traditional test, necessitating compensation under the Fifth and Fourteenth Amendments of the United States Constitution. *Id.* at 438, 102 S.Ct. at 3164, 73 L.Ed.2d at 884. In accordance with *Loretto*, the Act specifically states that it effects a taking: "[t]he landlord may, however, require reasonable compensation in exchange for a permanent taking of his property resulting from the installation of [cable television] system facilities within and upon his multiple dwelling premises, to be paid by the operator." 68 P.S. § 250.502–B.

¶ 14 In the instant case, the Tenants' Right to Cable Television Act plainly states that its mandate to allow the cable provider of the tenants' choice access to the landlord's property constitutes a permanent taking of the property. In addition, *Loretto, supra* instructs that such a statutory mandate effects a taking. Thus, we conclude that the trial court erred in its determination to the contrary. Accordingly, the Act effects a taking.

¶ 15 In its second issue, Hill House argues that the Act is unconstitutional because it infringes on the landlord's constitutional right against deprivation of property without due process and just compensation. Hill House sets forth a list of reasons why it believes the Act violates the landlord's due process rights and just compensation rights. In particular, Hill House asserts that the Act violates constitutional due process and just compensation requirements for the following reasons:

(1) the Act does not provide a *de novo* review and a jury trial;

(2) the Act limits review of the arbitrator's damages award in the Court of Common Pleas to damages, instead of offering *de novo* judicial review of whether the landlord must allow the cable operator on his property;

(3) the Act requires mandatory arbitration and is an unconstitutional delegation of judicial power;

(4) the Act requires the parties to submit to arbitration even though the parties have not agreed to the arbitration;

(5) the Act provides only for symbolic or incidental loss;

(6) the Act lacks adequate standards to restrain the exercise of eminent domain power;

(7) the Act provides a statutory measure of damages that is in effect "a decrease in the resale or rental value of the property" as a result of installation;

(8) the Act unconstitutionally requires the landlord to pay for the costs associated with the proceedings which result in the loss of the landlord's property;

(9) the Act denies building owners the protections provided in the Eminent Domain Code because it does not give property owners recourse to the elaborate procedures in Eminent Domain Code for assessment of damages for takings by cable television providers.

(Hill House's Brief at 16–32). Under this issue, Hill House also claims that the arbitration award should be vacated because it allows Comcast to wire the entire building on the request of only five tenants. "Put simply, those tenants who have not requested service from Comcast ... have a constitutional and statutory right to be left alone." (Hill House's Brief at 33).

¶ 16 Further, Hill House complains that the arbitrator exceeded his authority, where the award essentially makes Hill House an "agent" for Comcast in the future. Hill House claims that the award obligates it to assist Comcast in future marketing and other business activities, which constitutes involuntary servitude in derogation of the Thirteenth Amendment of the United States Constitution. For all of these reasons, Hill House concludes the arbitration award should be vacated. We disagree.

¶ 17 This Court recently addressed substantially similar arguments in *Adelphia Cablevision Associates of Radnor, L.P. v. University City Housing Co.*, 755 A.2d 703(Pa.Super.2000). The Court explained:

> The power of eminent domain over property arises only when legislative action sets forth the occasions, modes, and agencies for its exercise. The legislature may delegate the right to exercise eminent domain power, but the body to which the power is entrusted has no authority beyond that which is legislatively granted. Under the right of eminent domain, "private property can only be taken for a public use," and the legislature has no power "to invest either an individual or a corporation with the right to take the property of a private owner for the private use of some other individual or corporation, even if a method is provided for ascertaining the damages and paying what shall be deemed just compensation." A taking by eminent domain does not lose its public character merely because there may exist therein some feature of private gain. If the public good is enhanced, it is immaterial that a private interest also may be benefited.

> In enacting Article V–B, the General Assembly made the following findings:

> (1) Cable television has become an important medium of public communication, education and entertainment.

> (2) It is in the public interest to assure apartment residents and other tenants of leased residential dwellings access to cable television service of a quality and cost comparable to service available to residents living in personally owned dwellings.

(3) It is in the public interest to afford apartment residents and other tenants of leased residential dwellings the opportunity to obtain cable television service of their choice and to prevent landlords from treating such residents and tenants as a captive market for the sale of television reception services selected or provided by the landlord.

68 P.S. § 250.502–B, Historical and Statutory Note. Pursuant to these legislative purposes, the General Assembly enacted Article V–B, which grants eminent domain power to CATV operators upon a request by a tenant of a leased residential dwelling. *See* 68 P.S. §§ 250.503–B and 250.504–B; *see also Loretto,* [*supra*] (holding that a permanent physical occupation of an owner's property for purposes of the installation of CATV equipment constitutes a taking of the owner's property under the Fifth and Fourteenth Amendments to the United States Constitution).

---

[3] Under section 250.503–B, a tenant "has a right to request and receive CATV services from an operator or a landlord provided that there has been an agreement between a landlord and an operator through the negotiation process outlined in section 504–B or through a ruling of an arbitrator as provided for in this article.... A landlord may not prohibit or otherwise prevent a tenant from requesting or acquiring CATV services from an operator of the tenant's choice provided that there has been an agreement between a landlord and an operator through the negotiation process outlined in section 504–B or through a ruling of an arbitrator as provided for in this article." 68 P.S. § 250.503–B (footnote omitted).

[4] Under section 250.504–B, "[i]f a tenant of a multiple dwelling premises requests an operator to provide CATV services and if the operator decides that it will provide such services, the operator shall so notify the landlord in writing within ten days after the operator decides to provide such service." 68 P.S. § 250.504–B.

Under Article V–B, if the operator decides that it will provide CATV services to a multiple dwelling premises, the operator must notify the landlord within ten days. *See* 68 P.S. § 250.504–B.

That notice must be accompanied by a proposal "outlining the nature of the work to be performed and including an offer of compensation for loss in value of property given in exchange for the permanent installation of CATV...." *Id.* In addition, the proposal "shall include a statement that the operator is liable to the landlord for any physical damage, shall set forth the means by which the operator will comply with the installation requirements of the landlord ... and shall state the time period for installation and security to be provided." *Id.*

Article V–B then provides for a forty-five day period of negotiation during which the landlord and the operator "will attempt to reach an agreement concerning the terms upon which CATV services shall be provided." *Id.* If the landlord and the operator are unable to reach an agreement after the forty-five day period, then the operator may request arbitration. 68 P.S. § 250.506–B (a)(2). The statute also makes provisions for the payment of just compensation by the operator to the landlord. 68 P.S. §§ 250.505–B, 250.506–B(c).

The legislative findings relative to the enactment of Article V–B make clear that the legislature has determined that the public interest is served by giving tenants of leased residential dwellings access to CATV services. Thus, when an operator decides to provide CATV services to such a dwelling, the public interest is served along with the private commercial interest of the operator. As we have stated, it is immaterial that a private interest is served by the exercise of eminent domain power as long as the public good is enhanced by that exercise. Further, Article V–B clearly provides methods for the exercise of eminent domain power delegated to the operator. Accordingly, Article V–B is a constitutional delegation of eminent domain power.

*       *       *

Section 250.506–B(b)(4) provides in pertinent part as follows:

(4) Within thirty days of the date of the notice of the decision of the arbitrators, either party may appeal the decision of the arbitrators in a court of common pleas, regarding the amount awarded as compensation for loss of value or for physical damages to the property.... 68 P.S. § 250.506–B (b)(4).

Due process is a flexible concept that calls for such procedural protections as the situation demands. The essential elements of due process are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case.

Section 250.506–B(b)(4) provides a landlord with the requirements of due process, *i.e.,* notice and an opportunity to be heard. Although section 250.506–B (b)(4) limits the issues that may be raised on appeal from an arbitrator's decision to those related to just compensation, **the arbitrator's decision itself is limited to the issue of just compensation.** *See* 250.506–B (setting forth procedures for determination of "[c]ompensation for loss of value"). Further, Article V–B does not limit a landlord's other rights to seek redress in the courts. For example, a landlord could file an action for an injunction or for a declaratory judgment if a landlord believed that a CATV operator's assertion of eminent domain rights was improper. *See Redevelopment Auth., City of Erie v. Owners or Parties in Interest,* 1 Pa. Cmwlth. 378, 274 A.2d 244 (1971) (stating that courts will review exercise of eminent domain power if there is evidence of fraud or palpable bad faith in the exercise of such power). Thus, although section 250.506–B limits an appeal to the issue of loss of value or physical damages, Article V–B does not violate the Pennsylvania or United States Constitutions on that basis.

A statute will withstand a "vagueness" challenge and will satisfy the requirements of due process if it contains reasonable standards to guide the prospective conduct. Section 250.506–B (b)(4) provides such a standard. The statute provides clearly that either party may appeal the arbitrator's decision to a court of common pleas within thirty days of that decision. 68 P.S. § 250.506–B(b)(4). The provision contains a reasonably ascertainable standard that is sufficient to guide the prospective conduct of landlords or operators. Accordingly, the statute does not violate due process. Further, under Article 5, Section 10 of the Pennsylvania Constitution, it is the function of the Pennsylvania Supreme Court, and not the Pennsylvania General Assembly, to prescribe rules of procedure for hearing and disposition of cases in court. As stated by the Pennsylvania Supreme Court in [*In re Appeal of*] *Churchill* [, 525 Pa. 80, 575 A.2d 550 (1990) ]:

[W]e know of no authority by which the Legislature can prescribe procedure in our courts under our Constitution. Article V, Section 10(c) of our Constitution specifically vests such authority in this Court. It is true that the Legislature can, and often does, enact statutes which give litigants a right of appeal; it can designate what court can hear a case, the scope of review on appeal, the time periods for taking an appeal, and in many cases whether the right to jury trial shall be extended. But we know of no authority which would vest power in the Legislature to tell the Judiciary how to hear and dispose of a case....

[*Id.*] at 88, 575 A.2d at 554. Thus, the fact that section 250.506–B(b)(4) does not set forth specific procedures for an appeal in a court of common pleas does not violate due process.

*Id.* at ¶¶ 22–26, 29–32, 755 A.2d at 710–712, 712–713 (most internal citations omitted) (emphasis added).

¶ 18 When a statute authorizes a taking of private property for public use, the necessity and expediency of such taking may be determined in such mode as the state may designate. *Bragg v. Weaver*, 251 U.S. 57, 58, 40 S.Ct. 62, 63, 64 L.Ed. 135, 136 (1919). *See also Hoffman v. Stevens*, 177 F.Supp. 898 (M.D.Pa.1959). "They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the fourteenth amendment." *Id.* What is essential to due process is an opportunity for the landowner to be heard on the matter of just compensation. *Id.*

¶ 19 In addition, "[c]ourts cannot interfere with the exercise of the power of eminent domain by an entity possessing such power, in the absence of proof of fraud, collusion, bad faith or arbitrary action equating an abuse of discretion." *Matter of Chesapeake Estates Partnership*, 701 A.2d 313, 317 (Pa.Cmwlth.1997) (citing *Weber v. Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970)). Finally, constitutional takings in this Commonwealth are not restricted to the Eminent Domain Code. *See Matter of Condemnation by Urban Redevelopment Authority of Pittsburgh*, 527 Pa. 550, 594 A.2d 1375 (1991), *cert. denied*, 502 U.S. 1004, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991) (demonstrating exercise of eminent domain power by local agency, under Pennsylvania's Urban Redevelopment Law at 35 P.S. §§ 1701–1719.1, to take property to repair urban blight).

¶ 20 With respect to Hill House's constitutional challenges, the Act makes several provisions for compensation to the landlord for the property that is taken. *See* 68 P.S. §§ 250.504–B 250.506–B. Moreover, the Act makes provisions for arriving at the amount of compensation the operator will pay to the landlord for the taking. *See id.* The Act also provides for timely compensation. *Id.* The necessity or expediency of the taking, however, remains a legislative matter. *See Bragg, supra.* Under the Act, therefore, the only issue before the arbitrator is damages. *See Adelphia, supra.* Thus, on appeal, Hill House is not entitled to a *de novo* judicial review of whether it must allow Comcast access to its property, where that issue is not even before the arbitrator. We conclude that Hill House was afforded adequate opportunity to be heard, through statutory arbitration, regarding its right to just and timely compensation. *See id.*

¶ 21 In addition, the Act need not provide for *de novo* review or a jury trial as provided in the Eminent Domain Code. Under Pennsylvania law, the exercise of eminent domain is not limited to the Eminent Domain Code. *See, e.g., Matter of Condemnation by Urban Redevelopment Authority of Pittsburgh, supra.* *See also Adelphia Cablevision, supra* at ¶ 31, 755 A.2d at 712–713 (holding that Article V–B is constitutional delegation of eminent domain power).

¶ 22 Moreover, the Act does not limit compensation to "incidental or symbolic" loss. Rather, the Act invites a landlord to present evidence such as alternative use for the space, monetary loss from not being able to use that space, and a decrease in resale or rental value due to the occupation by the cable equipment. *See* 68 P.S. § 250.506–B(c). Hill House, however, has not alleged that it incurred damage causing a decrease in the resale or rental value of the property. *See Hoffman v. Stevens*, 177 F.Supp. 898 (1959) (reciting ordinary and usual standard for determining damages under Pennsylvania law, where there has been "taking" of land, is measure of difference in market value of property before and after taking). Absent evidence of specific damages bearing on the market value of the property, a nominal damage award in the amount of $1.00 was appropriate.

¶ 23 We conclude that this Court's decision of *Adelphia Cablevision, supra* adequately addresses allegations of unconstitutional delegation of judicial power and mandatory arbitration. Based upon the foregoing and in light of the principles set forth in *Adelphia Cablevision, supra,* we conclude that the Act stands up to Hill House's constitutional challenges raised on this appeal.

■ ¶ 24 Further, our review of the arbitrator's award makes clear that the multiple dwelling service agreement adopted by the arbitrator does not create any agency, employment or joint venture between the parties. The agreement provides only that, upon request by Comcast, Hill House will supply new tenants with Comcast's literature for the purpose of advising new tenants of the available Comcast services. Hill House's contention that this constitutes involuntary servitude is disingenuous.

■ ¶ 25 Finally, both the Act and the arbitrator's award allow that the parties shall bear equally the administrative fees and expenses arising out of the arbitration process. The statutory scheme makes clear that the costs are borne by the parties equally when negotiation has failed. Here, Hill House refused to negotiate. The failure of the negotiation process led to the arbitration. We see nothing constitutionally irregular about requiring the parties to share the expenses incurred.[4]

¶ 26 In its last argument, Hill House claims that even if the Act is facially constitutional, then it was invalidly applied in this case. Hill House asserts that Comcast improperly invoked the arbitration provision of the Act because the notice

sent to Hill House was defective. Specifically, Hill House suggests that Comcast Philadelphia did not have the authority to proceed under or to enforce the Act because the tenants' requests for cable service were directed to Comcast Willow Grove and statutory notice to Hill House was sent by Comcast Philadelphia. Hill House asserts that the arbitrator unaccountably allowed Comcast Philadelphia to be substituted for Comcast Willow Grove.

¶ 27 Hill House also argues that Comcast Philadelphia's original notice to Hill House was flawed under Section 250.504–B because the notice to Hill House failed to set forth the specifics required for notice under that Section. Hill House concludes that the arbitrator's award must be vacated. We disagree.

¶ 28 Section 250–504–B of the Act governs notice of the right to render cable television services as follows:

**§ 250.504B. Right to render services; notice**

If a tenant of a multiple dwelling premises requests an operator to provide CATV services and if the operator decides that it will provide such services, the operator shall so notify the landlord in writing within ten days after the operator decides to provide such service. If the operator fails to provide such notice, then the tenant's request shall be terminated. If the operator agrees to provide said CATV services, then a forty-five day period of negotiation between the landlord and the operator shall be commenced. This original notice shall state as follows: "The landlord, tenants and operators have rights granted under Article V–B of the act. . . ." The original

---

4. In addition, Hill House maintains that the arbitrator exceeded his authority under the Act, where not all of the tenants requested cable service from Comcast. As a result, Hill House reasons, the arbitrator imposed contractual obligations upon an unwilling party. This argument has no merit. The existence and presence of cable access does not in and of itself require tenants to subscribe to Comcast services.

We need not address Hill House's contention that the installation of Comcast services offends the non-requesting tenants' "right to be left alone." This claim is presented in the most conclusory manner, virtually guaranteeing its dismissal on appeal. Moreover, nothing in the installation proposal indicates that Comcast will have unfettered access to the common areas in the building or to the rental units of non-subscribers.

notice shall be accompanied by a proposal outlining the nature of the work to be performed and including an offer of compensation for loss of value in property given in exchange for the permanent installation of CATV system facilities. The proposal shall include a statement that the operator is liable for any physical damage, shall set forth the means by which the operator will comply with the installation requirements of the landlord pursuant to section 505–B and shall state the time period for installation and security to be provided. The landlord may waive his right to security at any time in the negotiation process.

68 P.S. § 250.504–B (internal footnotes omitted).

¶ 29 In the instant case, the record demonstrates that the tenants' requests for Comcast CATV were premised on a basic dissatisfaction with their current cable system and a desire for an increased number of cable stations and a fast internet-provider. The tenants requested Comcast service from whichever Comcast provider served their geographic region. Therefore, notice from Comcast Philadelphia to Hill House was appropriate under the Act as Comcast Philadelphia is the Comcast provider for the geographic region.

¶ 30 Further, a review of the notice sent to Hill House reveals that the notice complied with the statute and was accompanied by an adequate proposal. The proposal explained the installation process in detail, including an offer of compensation and a statement of liability for physical damage. Thus, we conclude, Comcast complied with the statutory notice requirements.

¶ 31 Based upon the foregoing, we hold that enforcement of the Tenants' Right to Cable Television Act at 68 P.S. §§ 250.501–B to 250.510–B effects a taking. We also hold that Hill House was afforded adequate opportunity to be heard, through statutory arbitration, regarding its right to just and timely compensation and that the Act withstands Hill House's remaining constitutional challenges raised on appeal. Finally, we hold that Comcast validly applied the Act under the circumstances of this case. Accordingly, we affirm the trial court's order and judgment confirming the arbitrator's award in favor of Comcast. *See Espenshade v. Espenshade,* 729 A.2d 1239, 1246 n. 5 (Pa.Super.1999) (restating principle that Superior Court may affirm on ground other than that relied upon by trial court).

¶ 32 Judgment affirmed.