

Opinions of the United
States Court of Appeals
for the Third Circuit

4-16-2007

# Healey v. Comcast SE PA Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1881

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Healey v. Comcast SE PA Inc" (2007). *2007 Decisions.* Paper 1304.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1304

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT-PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-1881

ROBERT T. HEALEY;
WILLIAM J. HEALEY, as Co-Partners
t/a "Falls Creek Village" and
"Commons at Fallsington",

Appellants

v.

COMCAST OF SOUTHEAST PENNSYLVANIA, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 03-cv-5773
District Judge: The Honorable Harvey J. Bartle, III

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 10, 2007

Before: SMITH, NYGAARD, and HANSEN,* *Circuit Judges*

(Filed:  April 16, 2007)
_____

OPINION
_____

SMITH, *Circuit Judge*.

_____

    *The Honorable David R. Hansen, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

The central issue presented by this appeal is whether the District Court correctly interpreted the agreements between the parties and applied the proper law in resolving this dispute. Appellants Robert T. Healey and William J. Healey contend that the District Court erred in not applying the automatic abandonment provisions of 47 C.F.R. § 76.804 to Comcast's failure to comply with the deadlines set forth in that section. The Healeys also assert that Comcast has no right to access and to provide services at the Healeys' apartment complexes under the Pennsylvania Landlord and Tenant Act, 68 PA. STAT. ANN. § 250.501-B, *et seq*.

Because this is a non-precedential opinion and we write only for the parties, our factual recitation is brief. The Healeys own and manage Falls Creek Village and Commons at Fallsington, two Pennsylvania apartment complexes. Comcast provides cable service to some of the residents of the properties and maintains home run wiring[2] on the premises in order to serve its customers. On May 13, 2003, the Healeys sent Notices of Termination to Comcast, informing the company that, because it did not have a contract to serve the properties, Comcast's service would be terminated as of August 10,

---

[2]"Home run wiring" is defined as "[t]he wiring from the demarcation point to the point at which the MVPD's [multichannel video programming distributor, or, in layman terms, a cable service provider] wiring becomes devoted to an individual subscriber or individual loop." 47 C.F.R. § 76.800(d). The "demarcation point" is "at (or about) twelve inches outside of where the cable wire enters the subscriber's dwelling unit," or "at (or about) twelve inches outside of where the cable wire enters or exits the first and last individual dwelling units on the loop," or "where the wire is physically inaccessible at such point(s), the closest practicable point thereto that does not require access to an individual subscriber's dwelling unit." 47 C.F.R. §§ 76.5(mm)(2) and (3).

2003, and Comcast's access to the premises would also end. On July 25, 2003, the parties agreed to a standstill agreement that put all of their litigation on hold for a 45-day period. On October 17, 2003, the Healeys filed this action for declaratory relief, seeking an order that Comcast had abandoned its home run wiring. The District Court held a bench trial and ruled in favor of Comcast, holding that: (1) Comcast owns and has the right to use the wiring on the properties, (2) Comcast is entitled to access to serve tenants, and (3) the Healeys are enjoined from inhibiting Comcast in its provision of services. For the reasons stated below, we will affirm the judgment of the District Court.

## I.

The District Court had jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367(a). Appellate review is proper under 28 U.S.C. § 1291. We review the District Court's findings of fact for clear error and its conclusions of law de novo. *Breyer v. Ashcroft*, 350 F.3d 327, 328 (3d Cir. 2003), citing *Edwards v. Wyatt*, 335 F.3d 261, 271 (3d Cir. 2003).

## II.

The District Court found that Comcast had a right, stemming from a set of 1997 agreements between the Healeys and Suburban Cable TV Company, Inc. ("Suburban Cable"), Comcast's predecessor in interest, to maintain home run wiring on the properties for the purpose of providing cable service. We agree to the extent that Comcast is currently providing, or has been requested to provide, service to residents of some of the units.

3

Both federal and state law contain provisions for determining when a cable service provider may have access to private property in order to serve residents there. Under the federal framework, 47 C.F.R. § 76.804(a) specifies the building-by-building procedure. Subsection (a) provides that "[w]here an MVPD owns the home run wiring in an MDU [multiple dwelling unit] and does not ... have a legally enforceable right to remain on the premises against the wishes of the MDU owner, the MDU owner may give the MVPD a minimum of 90 days' written notice that its access to the entire building will be terminated...." 47 C.F.R. § 76.804(a)(1). The section stipulates the procedure by which the incumbent provider and building owner will negotiate the disposition of the home run wiring. Upon receiving notice from the building owner, the incumbent provider may elect to remove, abandon, or sell the home run wiring for that building. *Id.*

Alternatively, § 76.804(b) specifies the unit-by-unit regulations. Subsection (b) provides that "[w]here an MVPD owns the home run wiring in an MDU and does not ... have a legally enforceable right to maintain any particular home run wire dedicated to a particular unit on the premises against the MDU owner's wishes, the MDU owner may permit multiple MVPDs to compete for the right to use the individual home run wires dedicated to each unit in the MDU." 47 C.F.R. § 76.804(b)(1).

The Healeys' notices of May 13, 2003 attempted to invoke the building-by-building regulations of subsection (a). However, as explained below, because Comcast had a legally enforceable right to serve some of the units in the buildings, the attempted building-wide eviction was ineffective.

4

The Tenth Circuit addressed a similar factual situation in *Time Warner Entertainment Company, L.P. v. Everest Midwest Licensee, L.L.C.*, 381 F.3d 1039 (10th Cir. 2004). In that case, the appellant, Time Warner, had an agreement with an apartment complex, The Atriums, for

> the right, license and permission to install, operate and maintain such of the facilities as TeleCable [Time Warner] deems necessary or desirable in or on the Owner's [The Atriums'] property and in the Project in order to provide CATV and Pay TV services to tenants in the Project. TeleCable [Time Warner] shall have the right to enter the Project at any time to perform maintenance on and make repairs and replacements of the facilities, or any part thereof, and to install or disconnect customers.

*Id.* at 1043. On this basis, Time Warner asserted that it had a legally enforceable right to maintain its home run wiring throughout The Atriums, and could not be forced under 47 C.F.R. § 76.804(a) to remove, abandon, or sell any part of its wiring to a competitor. The Tenth Circuit found subsection (a) inapplicable. It explained that

> [T]he overriding purpose of the license agreement was the provision of cable television services to the residents of The Atriums; any interpretation of the license agreement which would allow the license to continue without the provision of cable services is directly contrary to the purpose of the agreement and must be disfavored. Consequently, we agree with the district court that the license agreement grants Time Warner a legally enforceable right to maintain its home run wiring to a particular unit only when Time Warner is providing cable services to that unit.

*Id.* at 1050. The Court held that "under the license agreement between The Atriums and Time Warner, The Atriums may invoke the procedures outlined in 47 C.F.R. § 76.804(b) as to the home run wiring dedicated to units not subscribing to Time Warner's services." *Id.* at 1055. "Because the federal home run wiring regulations only apply if an incumbent

5

provider no longer has a legally enforceable right to maintain its home run wires in an MDU, [the] interpretation of the license agreement necessarily implicates whether the federal regulations apply...." *Id.* at 1044; *see also* In the Matter of Telecommunications Services Inside Wiring, 13 F.C.C.R. 3659, 3693 (Oct. 17, 1997) ("These procedures [regarding inside wiring] will not apply where the incumbent provider has a contractual, statutory or common law right to maintain its home run wiring on the property.").

The language of the April 30, 1997 agreement between the Healeys and Suburban Cable stated in part that:

> Suburban Cable is the rightful owner of any and all wire, cable, or other equipment which Suburban Cable or Oxford Valley has installed at FCV [Falls Creek Village] and which Suburban Cable uses or has used to provide cable television service to the occupants at FCV.

The stipulated agreement of settlement and release, dated April 28, 1997 stated that:

> [Suburban Cable] is the rightful owner of any and all wire, cable, or other equipment which Suburban Cable or its predecessor, Oxford Valley Cablevision Inc., has installed at The Commons at Fallsington and which Suburban Cable uses or has used to provide cable television service to the tenants at said apartment complex.

Both agreements also contained provisions warding against interference by the Healeys. In the April 30, 1997 agreement, which substantively parallels the stipulated agreement, the parties agreed that "[the Healeys] will not remove, cut, use or otherwise tamper with the wire, cable, and equipment Suburban Cable uses or has used to provide cable television services...."

Both agreements express the clear desire of the parties to have "one set of interior

wiring in each apartment unit which either Suburban Cable or ACS [a competing cable operator] [and the Healeys] can use in conformity with the terms of this Agreement...." The provisions contemplate the parties' freedom of access to the internal wiring whenever a resident chooses to subscribe to one of their services, provided that the user maintains the wiring in good condition. Under the agreements, neither party is allowed to charge the other for use of the wiring in individual apartments, provisions are made for the disposition of wiring following a tenant's vacancy of the apartment, and the procedures for installing a wall plate in order to commence service are outlined. In effect, the agreements, although entered into prior to the enactment of 47 C.F.R. § 76.804(b), presciently prescribe the sort of procedures required by that subsection.

Despite the fact that the agreements predate the regulation, § 76.804(b) is applicable to these agreements as to the home run wiring dedicated to units not subscribing to Comcast's services. The purpose of the statute is to "promote competition and consumer choice by bringing order and certainty to the disposition of the MDU home run wiring upon termination of service." 13 F.C.C.R. at 3680. In particular, in commenting upon this section, the FCC noted that "we think competition has been deterred by prolonged assertions of ownership interest in the wiring by incumbents...." *Id.* at 3685. The statute expressly permits a building owner to abrogate an incumbent provider's ownership interest where the "incumbent has no legally enforceable right to remain on the premises." *Id.* at 3693.

The 1997 agreements demonstrate that Comcast enjoys a legally enforceable right

7

to maintain its home run wiring at the Healeys' properties for the purpose of serving customers in some of the units. Thus, the federal regulations in 47 C.F.R. § 76.804(b) apply to the extent that Comcast is not currently providing service to residents in some units. In order to invoke the procedures in § 76.804(b), the Healeys were required to "provide at least 60 days' written notice to the incumbent MVPD of the MDU owner's *intention to invoke this procedure*." 47 C.F.R. § 76.804(b)(1) (emphasis added). The May 13, 2003 notices sent to Comcast stated that:

> As you know Comcast does not have a contract to serve the above referenced property, accordingly your services to the [property] are hereby terminated effective August 10, 2003. As a result your access to the premises will also terminate on that date.
> Should you wish to terminate sooner, please let me know.

These notices did not communicate an intent to invoke the procedure under 47 C.F.R. § 76.804(b). To the extent that they attempted to invoke § 76.804(a), they were ineffective because Comcast had a legally enforceable right to remain on the premises against the Healeys' wishes. Instead, these notices baldly stated that Comcast was being evicted. They do not fulfill the requirements of subsection (b)(1), and therefore did not give Comcast sufficient notice. See 47 C.F.R. § 76.804(b)(1) (mandating that the MDU owner "*must* provide at least 60 days' written notice to the incumbent MVPD of the MDU owner's intention to invoke this procedure." (emphasis added)).

Comcast also has a legally enforceable right to deliver services to the properties under Pennsylvania law. In an alternate finding, the District Court noted that Comcast had received requests to provide cable services from residents in some units. Pennsylvania is a

mandatory access state. 68 PA. STAT. ANN. § 250.501-B, *et seq.*; *Weinberg v. Comcast Cablevision of Philadelphia, L.P.*, 759 A.2d 395, 399 (Pa. Super. 2000) ("The ... Act states that landlords must allow the cable-company of their tenants' choice to install its equipment on the landlords' property."). The FCC made clear that in promulgating its rules under the Cable Television Consumer Protection and Competition Act of 1992, it was "not preempting any rights the incumbent provider may have had under state law." 13 F.C.C.R. at 3693. Further, the FCC explained that "our procedures will apply in mandatory access states to the extent that state law does not permit the incumbent to maintain its home run wiring ... or a particular home run wire to a particular subscriber ... against the will of the MDU owner." *Id.* at 3699. On November 3, 2003, Comcast sent a notice to the Healeys indicating its intention to provide services to tenants, pursuant to the Pennsylvania Tenant's Rights to Cable Television Act, 68 PA. STAT. ANN. § 250.501-B, *et seq*. The District Court determined that by sending this notice, Comcast complied with the Act, and that this notice triggered, if necessary, the required negotiating period. The Court correctly noted that because Comcast has an absolute right under Pennsylvania law to provide service at the request of the tenant, the only issues for resolution are compensation and the manner of access.

Although the provisions in § 76.804(b) would typically apply to allow a property owner to insist that an incumbent operator either remove, abandon, or sell its home run wiring to apartments that were not currently requesting its service, the Healeys did not properly invoke the provisions of that section. Consequently, the Healeys' argument that

9

the automatic abandonment provisions should apply lacks merit. Moreover, under both Pennsylvania law and the 1997 agreements, the Healeys had no right to attempt to force Comcast to cease providing cable service to residents of the units who requested such service. Accordingly, we will affirm the judgment of the District Court.