# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2162

_____

| | | |
|---|---|---|
| Lori A. Mosby, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Stark Ligon, in his individual capacity | * | |
| and in his official capacity as Executive | * | |
| Director of the Supreme Court | * | |
| Committee on Professional Conduct; | * | |
| W. H. Arnold, Chief Justice, in his | * | |
| official capacity, Arkansas Supreme | * | |
| Court; sued as W. H. "Dub" Arnold; | * | |
| Ray Thornton, Justice, in his official | * | |
| capacity, Arkansas Supreme Court; | * | |
| Robert Brown, Justice, in his official | * | |
| capacity, Arkansas Supreme Court; | * | |
| Tom Glaze, Justice, in his official | * | |
| capacity, Arkansas Supreme Court; | * | |
| Donald L. Corbin, Justice, in his official | * | |
| capacity, Arkansas Supreme Court; | * | |
| Annabelle Clinton Imber, Justice, in | * | |
| her official capacity, Arkansas Supreme | * | |
| Court; Jim Hannah, Justice, in his | * | |
| official capacity, Arkansas Supreme | * | |
| Court, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: January 12, 2005
Filed:  August 17, 2005
_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Lori A. Mosby, an African-American attorney from Arkansas, appeals from the dismissal of her complaint against Stark Ligon, Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, and seven Justices of the Arkansas Supreme Court.  Mosby alleged violations of 42 U.S.C. §§ 1981 and 1983 relating to the disciplinary processes of the Arkansas bar.  The district court[1] granted the motion to dismiss brought by Ligon and the seven Justices, and we affirm.

I.

The events precipitating Mosby's lawsuit began in July 2001.  Ligon, in his capacity as Executive Director of the Supreme Court Committee on Professional Conduct ("Committee"), received a complaint on July 10, 2001, from one of Mosby's clients regarding a personal injury claim that Mosby was handling.  The client alleged that Mosby had been dilatory in reaching a settlement with the opposing party, had been insufficiently accessible during the settlement process, and had failed to provide the client with requested copies of documents.  Mosby settled the client's personal injury suit in mid-July 2001, and the settlement amount was paid on July 19.  In response to the client's complaint, Ligon contacted Mosby and, after ascertaining that

_____

[1]The Honorable Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

the matter had settled, requested a copy of the settlement check and a release form executed by the client.

Mosby sent Ligon a copy of the release and a copy of her check to her client for the net settlement proceeds, in the amount of $5,940. Ligon then requested a copy of Mosby's "settlement sheet" accounting for the entire amount of the $11,000 settlement. Mosby admitted that she did not have a settlement sheet, so Ligon requested that she reconstruct one and provide him with copies of all checks drawn on Mosby's trust account against the settlement proceeds. During this process, Mosby discovered that $1,310 of the settlement proceeds owed to her client had not yet been paid. The $1,310 had been retained by Mosby, apparently on the understanding that she would use it to pay her client's medical bills. On learning of this, Ligon requested and received records proving that there had been $1,310 in Mosby's trust account at all times after the receipt of her client's settlement. At this time, Mosby accused Ligon of expanding his investigation beyond the scope of her client's initial complaint.

After completing its investigation in January 2003, the Committee filed a formal complaint against Mosby, alleging that Mosby had failed to (1) provide her client with all of the settlement funds to which the client was entitled until almost eighteen months after receipt of the funds, (2) reasonably respond to her client's inquiries regarding her case, (3) provide her client with a written statement accounting for the proceeds of the settlement, and (4) timely reconcile her client accounts in her trust account. These acts, it was alleged, amounted to violations of several Arkansas Model Rules of Professional Conduct ("Rules").

A panel of the Committee found Mosby guilty of violating the Rules, cautioned her, and ordered her to pay $50 in costs. The Committee's findings and order were accompanied by a cover letter informing Mosby of her right to a public hearing before

a different panel of the Committee. Mosby did not request a public hearing, and the Committee's decision became final.

Mosby later filed this action, alleging that Ligon had acted and was likely to act in the future "in bad faith and with deliberate indifference" toward Mosby's rights. Mosby also asserted that Ligon had applied the Rules to her in a manner that violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment and was likely to do so in the future. Finally, Mosby accused the Justices of the Arkansas Supreme Court of discriminatory application of the Rules, and of deliberate indifference toward such application of the Rules by others. All of the above acts were said to "implicate" 42 U.S.C. §§ 1981 and 1983.

In her complaint, Mosby sought six types of relief. First, she sought injunctive and declaratory relief directing the Arkansas Supreme Court to review its procedures governing the powers of the Committee's executive director, and to "specify directives by which the Executive Director is authorized to act." Second, Mosby requested the formulation of "objective standards" to "guide and define each assertion of misconduct identified by" the Rules. Third, she requested the establishment of "standards and guidelines" for applying the Rules. Fourth, Mosby sought an injunction against Ligon from further enforcement of the Rules until the Justices had formulated guidelines and standards. Fifth, she requested a declaration that the past practices of the Committee discriminated against black attorneys (including herself). Finally, Mosby sought an injunction against retaliatory action by Ligon.

The district court dismissed Mosby's complaint, noting that the *Rooker-Feldman* doctrine, which interprets 28 U.S.C. § 1257 to deprive lower federal courts of jurisdiction to hear challenges to state court judgments except in habeas corpus proceedings, applies to state proceedings that are "essentially judicial in nature." (Mem. Op. and Order of Dismissal at 7). *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415, 416 (1923). The

-4-

court held that the doctrine barred its review of a decision of the Committee, and that Mosby's constitutional claims were "inextricably intertwined" with the Committee's decision in her case so that review of these claims was also prohibited. (*Id.* at 6, 9). The district court also concluded that it was obliged to abstain under the doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), because the Committee's decision constituted an "ongoing state court proceeding." (*Id.*).

## II.

On de novo review, we agree with the district court that it lacked subject matter jurisdiction over Mosby's claims. That portion of her complaint that seeks a declaration concerning the Committee's disciplinary proceedings against her constitutes a challenge to the result of a state judicial proceeding, and the *Rooker-Feldman* doctrine bars its consideration in the district court. To the extent that her complaint states only a facial challenge to the Rules, or a declaration with respect to past disciplinary actions involving other attorneys, Mosby lacks standing because she has failed to allege an Article III case or controversy.

## A.

The *Rooker-Feldman* doctrine provides that, "with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003) (internal quotation omitted). The doctrine bars federal courts from hearing cases brought by the losing parties in state court proceedings alleging "injury caused by the state-court judgment and seeking review and rejection of that judgment." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517, 1526 (2005).

Mosby does not dispute that the Committee's disciplinary proceedings against her were judicial in nature. *See Feldman*, 460 U.S. at 479. Because the Committee

is created and appointed by the Arkansas Supreme Court, operates pursuant to rules promulgated by that court, and is subject to review by that court, the Committee's decision to discipline Mosby is the functional equivalent of a state-court judgment. *Thomas v. Kadish*, 748 F.2d 276, 281-82 (5th Cir. 1984); *Muhammed v. Ark. Supreme Court Comm. on Prof'l Conduct*, 655 F. Supp. 584, 586 (E.D. Ark. 1986). Mosby argues, however, that the district court erred in concluding that it lacked jurisdiction over her complaint, because she does "not factually challenge[] the Committee's ruling pertaining to her," but "makes a general challenge to the constitutionality of how the Committee executes the rules," and "facially challenge[s] the administration of the rules." (Br. of Appellant at 7).

Despite these assertions, we agree with the district court that at least some of the substance of Mosby's complaint is a challenge to the Committee's disciplinary action against her. Mosby alleges that the Rules were applied to her in a discriminatory manner in violation of the United States Constitution. She seeks a declaratory judgment to this effect, perhaps because the sanction has damaged her permanent record. While Mosby undoubtedly has standing to pursue this challenge, we think this claim seeks to undo the Committee's decision in Mosby's case, for the only practical reason to seek a declaration that the discipline was meted out in violation of the Fourteenth Amendment would be to set aside the sanction.

Although Mosby failed to raise her constitutional claims before the Committee or the Arkansas Supreme Court, that circumstance does not give the district court jurisdiction to consider them. That Mosby *could have* raised these claims in the state-court proceedings means that in this case the district court "is in essence being called upon to review a state court decision." *Feldman*, 460 U.S. at 482 n.16. Therefore, that portion of Mosby's complaint challenging the Committee's previous disciplinary action against her is barred by the *Rooker-Feldman* doctrine.

B.

Mosby also asserts that *Rooker-Feldman* should not apply because she mounts only a "facial" challenge to the administration of the Rules. We agree that the *Rooker-Feldman* doctrine does not bar the district court from exercising jurisdiction over general challenges to the constitutionality of a State's disciplinary rules and processes. The Supreme Court's decision in *Feldman* drew a distinction for purposes of 28 U.S.C. § 1257 between actions seeking review of a state court's disposition of a specific claim and actions "mount[ing] a general challenge to the constitutionality" of state legislation. *Feldman*, 460 U.S. at 482-83. Only the Supreme Court has jurisdiction over the former, while the latter can be heard by federal district courts in which jurisdiction is otherwise proper. *Id.*

But *Feldman* does not relieve Mosby of the requirement that she demonstrate Article III standing, and we conclude that Mosby does not have standing to bring what she describes as her facial challenge. Because *Feldman* dealt primarily with the definition of judicial proceedings for the purposes of the *Rooker-Feldman* doctrine, the opinion "should not be read as implicating the standing of a litigant seeking declaratory or injunctive relief." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 837 (6th Cir. 2001).[2] Such litigants still must satisfy the normal requirements of Article III standing. *See id.* at 836-38; *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir. 1994); *Facio v. Jones*, 929 F.2d 541, 543-45 (10th Cir. 1991).

Article III of the United States Constitution confines the jurisdiction of federal courts to justiciable cases and controversies. U.S. Const. art. III, § 2; *Lujan v.*

---

[2]This reading of *Feldman* is consistent with the Supreme Court's own admonition that "when questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us." *Hagans v. Lavine*, 415 U.S. 528, 533 n.5 (1974).

*Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). Such cases and controversies include only those claims that allege some "injury in fact" redressable by a favorable judgment. *Elk Grove Unified Sch. Dist. v. Newdow*, 124 S. Ct. 2301, 2308 (2004). To satisfy this "injury in fact" requirement, a plaintiff seeking prospective relief against future conduct of defendants who caused injury in the past must show that she faces "a real and immediate threat that she would again suffer similar injury in the future." *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) (internal quotations and brackets omitted); *see O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). In addition to satisfying Article III standing requirements, litigants must stay within "prudential limitations" on the exercise of federal-court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). One such limitation is a rule that parties "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Id.* at 499.

To the extent Mosby's complaint asserts only a facial challenge to the administration of the Rules without "challeng[ing] the Committee's ruling pertaining to her," (Brief of Appellant at 7), it fails to allege the requisite standing. Mosby lacks Article III standing to seek prospective injunctive relief against future actions of the Committee and the Justices, because her complaint does not sufficiently allege a "real and immediate threat of repeated injury." *O'Shea*, 414 U.S. at 496. Instead, it dwells almost exclusively on Mosby's past interactions with Ligon. While earlier sanctions can be "evidence bearing on whether there is a real and immediate threat of repeated injury," *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation omitted), Mosby does not allege any facts suggesting the existence of such a threat. Because "[t]he rules of standing . . . are threshold determinants of the propriety of judicial intervention," the plaintiff has a responsibility "clearly to allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth*, 422 U.S. at 517-18.

The record here does not demonstrate that Mosby is likely to suffer from alleged discrimination by Ligon or the Justices of the Arkansas Supreme Court in the future. Her only likely opportunity for interactions with Ligon or the Committee in the future would be in the case of another alleged violation of the Rules. We deem apropos the Supreme Court's observation in *O'Shea*, that "attempting to anticipate whether and when respondents will be charged with crime . . . takes us into the area of speculation and conjecture," 414 U.S. at 497, because we have the same inability to foresee whether Mosby will face future disciplinary proceedings. The speculative nature of making this prediction leads us to conclude that the record does not establish a real or immediate threat of repeated injury. Mosby thus lacks standing to pursue the injunctive relief that she seeks.[3]

Mosby also requests a declaration that the past practices of the Committee discriminated against black attorneys other than herself. She fails to allege, however, that discipline imposed on other attorneys has caused Mosby herself to suffer an injury-in-fact that would satisfy the Article III standing requirement. In this respect, moreover, it is clear that Mosby attempts to "rest [her] claim to relief on the legal rights or interests of third parties," *Warth*, 422 U.S. at 499, and we conclude that she cannot overcome the prudential limitation on the exercise of federal jurisdiction. Mosby plainly does not fit within the limited exception to the prudential proscription against asserting the rights of third parties, for she presents no evidence of a "'close' relationship" with these attorneys or "a 'hindrance'" to the attorneys' ability to protect their own interests. *See Kowalski v. Tesmer*, 125 S. Ct. 564, 567 (2004)

---

[3]In her appellate brief and at oral argument, Mosby suggested cryptically that she has unrelated matters pending before the Committee. Such assertions were not part of the record before the district court, and we do not consider them in determining whether Mosby has standing to challenge future applications of the Rules. If Mosby had sought an injunction against application of the Rules in an ongoing Arkansas disciplinary matter, then it would be necessary to consider the applicability of the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971).

(quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).  We therefore conclude that Mosby lacks standing to assert the interests of other black attorneys.

For the foregoing reasons, we affirm the judgment of the district court.

_____