**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3587
_____

ROSE MARY KNICK,
                        Appellant

v.

TOWNSHIP OF SCOTT;
CARL S. FERRARO, Individually and in his Official
Capacity as Scott Township Code Enforcement Officer
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 3-14-cv-02223
District Judge: The Honorable A. Richard Caputo

Argued April 25, 2017

Before: SMITH, *Chief Judge,* McKEE, and RENDELL,
*Circuit Judges*

(Filed: July 6, 2017)

Frank J. Bolock, Jr.
212 Front Street
Clarks Summit, PA  18411

J. David Breemer                    **[ARGUED]**
Pacific Legal Foundation
930 G Street
Sacramento, CA  95814
  *Counsel for Appellant*

Mark J. Kozlowski
William J. McPartland
Thomas A. Specht                    **[ARGUED]**
Marshall Dennehey Warner
Coleman & Goggin
P.O. Box 3118
Scranton, PA  18505
  *Counsel for Appellees*

————————————

OPINION
————————————

SMITH, *Chief Judge.*

On December 20, 2012, the Township of Scott in Lackawanna County, Pennsylvania enacted an ordinance regulating cemeteries. The ordinance authorizes officials to enter upon any property within the Township to determine the existence and location of any cemetery. The ordinance also

2

compels property owners to hold their private cemeteries open to the public during daylight hours. The plaintiff, Rose Mary Knick, challenges the ordinance on two grounds. First, Knick argues that the ordinance authorizes unrestrained searches of private property in violation of the Fourth Amendment. Second, Knick argues that the ordinance takes private property without just compensation in violation of the Fifth Amendment.

The Township's ordinance is extraordinary and constitutionally suspect. However, important justiciability considerations preclude us from reaching the merits. Because Knick concedes that her Fourth Amendment rights were not violated and fails to demonstrate that they imminently will be, Knick lacks standing to advance her Fourth Amendment challenge. And as the District Court correctly held, Knick's Fifth Amendment claims are not ripe until she has sought and been denied just compensation using Pennsylvania's inverse-condemnation procedures, as required by the Supreme Court's decision in *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). We will therefore affirm.

I

On December 20, 2012, the Township of Scott enacted Ordinance No. 12-12-20-001, titled "Ordinance of the Township of Scott Township [sic], Lackawanna County, Pennsylvania, Relating to the Operation and Maintenance of Cemeteries and Burial Places" (hereinafter, the "Ordinance"). App. 82. The Ordinance applies to "[a]ll cemeteries, whether private or public, and whether existing or established prior to

the date of this Ordinance or hereafter created." *Id.* It requires cemetery owners to "properly maintain and upkeep any cemetery." App. 83.

Critical to this case are two provisions of the Ordinance. First, it requires that "[a]ll cemeteries within the Township shall be kept open and accessible to the general public during daylight hours. No owner . . . shall unreasonably restrict access to the general public nor shall any fee for access be charged." *Id.* We will refer to this as the "public-access provision."

Second, the Ordinance permits the Township's "Code Enforcement Officer and/or his/her agents and representatives [to] enter upon any property within the Township for the purposes of determining the existence of and location of any cemetery, in order to ensure compliance with the terms and provisions of this Ordinance." *Id.* We will refer to this as the "inspection provision."

Anyone who violates the Ordinance is subject to a fine of between $300 and $600, and "[e]ach day that the violation exists shall constitute a separate offense." *Id.*

On April 10, 2013, the Township Code Enforcement Officer, Carl S. Ferraro, entered Knick's property without an administrative warrant. Ferraro identified certain stones on Knick's property as grave markers and issued a Notice of Violation dated April 11, 2013. Knick disputes that a cemetery exists on her property.

4

On May 7, 2013, Knick brought suit against the Township in the Lackawanna County Court of Common Pleas seeking declaratory and injunctive relief. Knick filed an Emergency Motion for Injunctive Relief on or about that same date. The parties stipulated that the Township would withdraw its Notice of Violation and further stipulated to an order staying any enforcement actions against Knick. A hearing was held on October 8, 2014. Then, on October 21, the Court ruled that it "will render no decision on the matter." App. 261. Specifically, the Court ruled "that it is not the proper venue for this matter, since the case is not in the proper posture for a decision to be rendered on the Plaintiff's requested forms of relief." *Id.*[1] Then, on October 31, the Township issued another Notice of Violation. Knick filed a Petition for Contempt of Court in the Lackawanna County Court of Common Pleas, which the Court denied on January 30, 2015. At no point did Knick institute an inverse-condemnation proceeding against the Township. *See* 26 Pa. Const. Stat. Ann. § 502(c).

Knick filed this action on November 20, 2014 in the United States District Court for the Middle District of Pennsylvania. In her original Complaint, Knick asserted four Counts under 42 U.S.C. § 1983: (I) Fourth Amendment claims against the Township for maintaining a warrantless

---

[1] Although not apparent from the face of the Order, a subsequent state-court judge opined that "[a] reasonable interpretation" of the Order is that "Knick's constitutional challenge to the Ordinance should be litigated in any civil enforcement proceeding that may be filed by the Township." App. 192.

inspection regime (the facial challenge) and entering Knick's property without a warrant (the as-applied challenge); (II) a Fourth Amendment claim against the Township for failure to train its officials to obtain administrative warrants; (III) Fourth and Fourteenth Amendment claims against Ferraro in his official capacity for entering Knick's property without a warrant; and (IV) claims seeking invalidation of the Ordinance on Fourth, Fifth, and Fourteenth Amendment grounds, including, *inter alia*, vagueness, improper exercise of the Township's police power, and taking private property without just compensation. After the Township filed its motion to dismiss, Knick filed an Amended Complaint, which added Count V for declaratory and injunctive relief. By Order dated October 28, 2015, the District Court dismissed Counts I–III with prejudice and dismissed Counts IV and V without prejudice.

Knick filed a Second Amended Complaint on November 16, 2015. The Second Amended Complaint asserts three Counts: (I) the Fourth Amendment claims pled in Count I of the original complaint; (II) a claim that the Ordinance takes Knick's private property without just compensation, in violation of the Fourth, Fifth, and Fourteenth Amendments; and (III) claims for declaratory and injunctive relief because, *inter alia*, the Ordinance unconstitutionally takes Knick's property and authorizes unconstitutional searches. By Order dated September 7, 2016, the District Court dismissed Count I with prejudice for the reasons provided in its earlier decision and dismissed Counts II and III without prejudice pending exhaustion of state-law remedies.

6

This appeal timely followed. On appeal, Knick argues that the District Court erred by dismissing her Fourth Amendment facial challenge and by requiring her to exhaust state-law remedies for her takings claims.

II

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction to review "final decisions of the district courts," 28 U.S.C. § 1291, and we must assure ourselves of our jurisdiction sua sponte, *see, e.g.*, *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 118 (3d Cir. 1999). Although the District Court dismissed Knick's Second Amended Complaint without prejudice as to certain claims, we conclude that Knick nonetheless appealed from a final decision.

A final, appealable decision is one "by which a district court disassociates itself from a case." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 902 (2015) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995)). "While decisions of the Court have accorded § 1291 a practical rather than a technical construction, the statute's core application is to rulings that terminate an action." *Id.* (citations and internal quotation marks omitted). For that reason, dismissals without prejudice are ordinarily not final; leave to amend contemplates "further proceedings in the district court as part of the same action." *Doe v. Hesketh*, 828 F.3d 159, 165 (3d Cir. 2016) (quoting *Aluminum Co. of Am. v. Beazer E., Inc.*, 124 F.3d 551, 560 (3d Cir. 1997)).

7

But "[e]ven dismissals without prejudice have been held to be final and appealable if they end [ ][the] suit so far as the District Court was concerned." *Id.* (alterations in original) (quoting *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 198 n.3 (3d Cir. 2001)); *see also United States v. Wallace & Tiernan Co.*, 336 U.S. 793, 794 n.1 (1949). For example, we will review a dismissal without prejudice if a plaintiff stands on the complaint rather than exercising leave to amend, *Palakovic v. Wetzel*, 854 F.3d 209, 219 (3d Cir. 2017), if a plaintiff argues that administrative exhaustion would be futile, *Ghana v. Holland*, 226 F.3d 175, 180–81 (3d Cir. 2000), or if a plaintiff's claims are "effectively barred" from being subsequently reasserted due to the running of a statute of limitations or some similar obstacle, *LNC Invs., LLC v. Republic Nicar.*, 396 F.3d 342, 346 (3d Cir. 2005).

Here, the District Court dismissed Knick's takings claim without prejudice and directed her to exhaust state remedies. The District Court did not retain jurisdiction and closed the case. Its order further specified that, following the conclusion of state proceedings, any remaining takings claims must be "re-fil[ed] . . . in federal court." App. 57. As such, "there cannot be—and, by court order, there will not be—any further proceedings in the district court as part of the same action." *Beazer E.*, 124 F.3d at 560. "[T]he district court has divested itself of [the] case entirely, regardless of the fact that claims in the case may continue to go forward in state court." *Erie Cty. Retirees Ass'n v. Cty. of Erie*, 220 F.3d 193, 202 (3d Cir. 2000). The decision in this case is therefore final "even if a similar case may be filed in the future because the dismissal was without prejudice." *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 506 (7th Cir.

8

2009); *see also Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 385–86 (D.C. Cir. 2017); *Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 557–58 (6th Cir. 2017); *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 219 (2d Cir. 2006) ("[A] dismissal without prejudice, absent some retention of jurisdiction, is a final decision . . . ."); *cf. Blair v. Scott Specialty Gases*, 283 F.3d 595, 602 (3d Cir. 2002) (dismissal without prejudice in favor of arbitration is appealable where the District Court did not retain jurisdiction, even though further court proceedings may ensue following arbitration).

Thus, we are satisfied that the District Court's decision is a "final" one, and we have appellate jurisdiction under § 1291. We proceed to Knick's claims.

## III

We begin with Knick's facial Fourth Amendment challenge. We conclude that she lacks Article III standing because she has failed to demonstrate an injury-in-fact and redressability.

## A

The Second Amended Complaint asserts both facial and as-applied challenges to the Ordinance under the Fourth Amendment. As part of her as-applied challenge, Knick claimed to be injured by an unlawful search of her property. But the District Court ruled that the search in question was lawful, and Knick does not appeal that ruling. Although not

9

initially raised by the parties,[2] the question before us is whether Knick may persist in her facial Fourth Amendment challenge even though her own rights were not violated. Following supplemental briefing and oral argument by the parties, we conclude that Knick has failed to carry her burden to demonstrate Article III standing to challenge the Ordinance on Fourth Amendment grounds.

"[T]he irreducible constitutional minimum of standing contains three elements": injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). As "[t]he party invoking federal jurisdiction," Knick "bears the burden of establishing these elements." *Id.* at 561. "Plaintiffs must have standing at all stages of the litigation," and certain findings by a district court may require a subsequent reevaluation of standing. *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).

The first element, injury in fact, "is often determinative." *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009). The plaintiff must demonstrate "an invasion of a legally protected interest which is (a) concrete and

---

[2] The Township did advance the curious argument that Knick's claim fails the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Knick failed to demonstrate a cognizable injury. But that is not a requirement unique to *Monell*; it is a general requirement of all cases and controversies under Article III of the Constitution.

particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). To be concrete, an injury need not be "tangible," but "it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548–49 (2016). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). Generalized grievances will not suffice. *See Schuchardt v. President of the U.S.*, 839 F.3d 336, 344–45 (3d Cir. 2016) (distinguishing between generalized and widely shared grievances). Furthermore, "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Lujan*, 504 U.S. at 564 n.2). If the injury is sufficient under those standards, it must also be "fairly traceable to the challenged action[] and redressable by a favorable ruling" in accordance with the remaining two elements of standing. *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)).

In this case, the District Court ruled that the search of Knick's property complied with the Fourth Amendment because Ferraro searched an open field. "[A]n open field, unlike the curtilage of a home, is not one of those protected areas enumerated in the Fourth Amendment." *United States v. Jones*, 565 U.S. 400, 411 (2012) (citation omitted) (citing *Oliver v. United States*, 466 U.S. 170, 176–77 (1984)). Because Knick does not challenge that ruling on appeal, she has accepted the District Court's conclusion that her Fourth Amendment rights were not violated. She has likewise

11

accepted that her property was not even "searched" in the constitutional sense. *Id.* at 411 n.8. Even if Township officials were likely to return to the same part of Knick's property for further inspections, those would *also* be open-field searches not subject to Fourth Amendment protection. As discussed below, nothing in the record suggests that any future inspections would invade her home's curtilage.

As a result, any "injury" arising from open-field searches would not be legally protected. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772 (2000) ("The interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right."). Nor would that injury be redressable. If we were to enjoin the Ordinance's inspection provision today, the Township would still be able to use the open-fields doctrine to enter the part of Knick's property where a cemetery was allegedly discovered.[3] Put differently, Knick's situation is one "for which [the Ordinance] is irrelevant"; the Ordinance does "no work" in authorizing searches that would be independently lawful

---

[3] While an open-field search does not run afoul of the Fourth Amendment, it may still constitute trespass. *See Oliver*, 466 U.S. at 183. Knick does not argue that Ordinance allows Township officials to avoid liability for trespass. And even if it did, Knick does not argue that injury arising from a lack of trespass remedy could confer standing to mount a Fourth Amendment challenge where no Fourth Amendment injury has occurred or is imminent.

12

under established Fourth Amendment doctrines. *Los Angeles v. Patel*, 135 S. Ct. 2443, 2451 (2015).

Perhaps realizing these deficiencies, Knick changed tack in her supplemental brief. Now Knick attempts to premise standing on the fact that the Ordinance may permit the Township to search the curtilage of her home—an area of her property that is protected by the Fourth Amendment. *See* Knick Supp. Br. 3 ("Knick owns property, including curtilage, subject to this provision. She has alleged the Ordinance authorizes an invasion of her property. That is enough for standing, particularly at this early stage." (citations omitted)).

There are two problems with this theory. First, simply owning property protected by the Fourth Amendment describes a generalized grievance common to all residents of the Township. *See Lujan*, 504 U.S. at 575–76. We have recognized standing to challenge government search programs that are "universal in scope," but not before ensuring that the plaintiffs' injuries were "unmistakably personal." *Schuchardt*, 839 F.3d at 346. Knick has not alleged any personal harm arising from a threatened or actual curtilage search. Second, Knick cannot base standing on a future invasion of her home's curtilage without demonstrating an "actual or imminent, not conjectural and hypothetical" injury. *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). Simply owning property subject to a hypothetical search is "too speculative for Article III purposes." *Clapper*, 133 S. Ct. at 1147. *Compare id.* at 1148 (holding that plaintiffs lacked standing to bring facial Fourth Amendment challenge to a statute authorizing NSA surveillance because plaintiffs failed to demonstrate a "certainly impending" risk

13

that their communications would be intercepted), *with Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 166–67 (3d Cir. 2016) (holding that plaintiffs demonstrated standing to bring facial Fourth Amendment challenge where, *inter alia*, the plaintiffs incurred costs complying with a regulation that specifically targeted their type of business).[4]

Accordingly, we conclude that Knick failed to demonstrate a redressable injury-in-fact and therefore lacks standing.[5]

---

[4] There is no substantively lenient standard "at this early stage" as Knick claimed. Knick Supp. Br. 3. "[E]ach element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. As such, we simply apply the pleading standard to determine if Knick's allegations are sufficient to establish each element of standing. Even accepting Knick's allegations as true, they are insufficient for the reasons provided above.

[5] Our holding can also be understood in terms of ripeness, which "originate[s] from the same Article III requirement of a case or controversy." *Free Speech Coal.*, 825 F.3d at 167 n.15. "[I]f no injury has occurred, the plaintiff can be told either that *she* cannot sue, or that she cannot sue *yet*." *Id.* (quoting *Presbytery of New Jersey of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994)). If Knick or any other

B

In an attempt to salvage her Fourth Amendment claim, Knick argues that she has standing to assert a pure facial challenge without raising, much less proving, an accompanying as-applied challenge. Our holding, however, is rooted in time-tested principles of justiciability, not in any special attribute of facial or as-applied challenges. As courts and commentators have recognized, those labels often introduce confusion, and "the distinction . . . is not so well defined that it has some automatic effect." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010); *see* Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321, 1336 (2000) [hereinafter Fallon, *As-Applied and Facial Challenges*] (arguing that facial and as-applied challenges are not "sharply categorically distinct"). Nonetheless, there are several points about the interaction between those concepts that we must clarify.

---

resident of the Township can demonstrate a cognizable injury arising from a search independently authorized by the Ordinance, such as a curtilage search, then the Ordinance may be ripe for judicial review. Once such a claim is properly presented, the Ordinance cannot be upheld on the ground that individual searches might be "conducted under an exception to the warrant requirement[] or pursuant to a warrant itself," because those scenarios are "irrelevant to our analysis of a statute's facial validity." *Id.* at 168 (citing *Patel*, 135 S. Ct. at 2451).

15

As a general matter, Knick's argument is correct: there is no requirement that a facial challenge be accompanied by an as-applied challenge. *See, e.g.*, *Patel*, 135 S. Ct. 2443. Litigants with standing to challenge a law have considerable "flexibility . . . to shape the issues in litigation." Richard H. Fallon, Jr., *Fact and Fiction About Facial Challenges*, 99 Cal. L. Rev. 915, 947 (2011) [hereinafter Fallon, *Fact and Fiction*]. Litigants may argue that the law cannot be constitutionally applied to them due to some particular set of facts or circumstances (an as-applied challenge), that the law is unconstitutional in every application, including their own (a facial challenge), or both.[6]

However, even if a litigant does not allege a violation *as* applied, the law in question must still typically *be* applied— or at least be at risk of imminent application. That is because plaintiffs must always demonstrate the "irreducible constitutional minimum" of Article III standing. *Lujan*, 504 U.S. at 560. Facial challenges are no exception. *See Williams*

---

[6] *See United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010) (defining as-applied challenges as those that "contend that a law['s] . . . application to a particular person under particular circumstances deprived that person of a constitutional right"); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 308 n.11 (3d Cir. 2007) (defining facial challenges as those brought by "a single party [who] asserts that a law is invalid *not only* as applied to them, but as applied to all parties that might come before the court" (emphasis added)).

*v. Lew*, 819 F.3d 466, 476 (D.C. Cir. 2016). Furthermore, as a prudential matter, a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). That prudential rule is relaxed in certain doctrinal contexts, most notably in First Amendment claims.[7] *See Broadrick v. Oklahoma*, 413 U.S. 601, 611–12 (1973); *Osediacz v. City of Cranston*, 414 F.3d 136, 140–41 (1st Cir. 2005); *see also Pa. Prison Soc'y v. Cortés*, 508 F.3d 156, 168–69 (3d Cir. 2007) (declining to extend the solicitude shown in the "highly exceptional First Amendment context" to facial challenges raised under the Ex Post Facto and Due Process clauses).

---

[7] The solicitude shown to First Amendment rights is likely inapplicable in the Fourth Amendment context. It is well established that "Fourth Amendment rights are personal rights . . . which may not be vicariously asserted." *Schuchardt*, 839 F.3d at 346 (alteration in original) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). Thus, if Knick attempted to base standing on the Fourth Amendment rights of hypothetical third parties, standing would be strongly disfavored for prudential reasons even if she suffered a cognizable injury-in-fact. *Cf. Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 69 (1974) (holding that a bank could not assert the Fourth Amendment rights of its customers). Knick wisely does not invoke third-party standing here.

17

Plaintiffs with standing to challenge a law may assert solely facial challenges, but in doing so they accept a higher substantive burden. As the Supreme Court has repeatedly intoned, facial challenges are "the most difficult . . . to mount successfully" because the challenger "must establish that no set of circumstances exist under which the [statute] would be valid." *Patel*, 135 S. Ct. at 2449, 2450 (alterations in original) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).[8] The Supreme Court has repeatedly discouraged litigants from asserting facial challenges—particularly where surveying the full range of possible applications is made difficult by a bare-bones record or a need for technical expertise. *See, e.g.*, *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) (noting that facial challenges are disfavored because, in part, they "threaten to short circuit the democratic process"); *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007) (noting that facial challenges to an abortion-related law "should not have been entertained in the first instance," and instead should have been presented as "preenforcement, as-applied challenges" so that the Court could better assess "the nature of the medical risk" alleged); *Sabri v. United States*, 541 U.S. 600, 608–10 (2004) (noting that "facial challenges are best when infrequent" because "they invite judgments on

---

[8] We note that "some Members of the [Supreme] Court have criticized the *Salerno* formulation," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008), but the Supreme Court recently reaffirmed that *Salerno* applies at least in the Fourth Amendment context, *Patel*, 135 S. Ct. at 2450.

fact-poor records" and "depart[] from the norms of adjudication in federal courts").

If a litigant decides to bring both types of challenge, a court's ruling on one might affect the other. For example, ruling that a law is facially invalid "negates any need" to address an as-applied challenge. *Heffner v. Murphy*, 745 F.3d 56, 65 n.7 (3d Cir. 2014). But if a litigant loses an as-applied challenge because the court rules as a matter of law that the statute or ordinance was constitutionally applied to her, it follows *a fortiori* that the law is not unconstitutional in all applications. *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010); *see also Cty. Court of Ulster Cty. v. Allen*, 442 U.S. 140, 154–56 (1979) (holding that criminal defendants could not mount a facial challenge to a statute that had been constitutionally applied at their trial); *United States v. Raines*, 362 U.S. 17, 24–25 (1960); *Woollard v. Gallagher*, 712 F.3d 865, 882–83 (4th Cir. 2013); *Mosby v. Ligon*, 418 F.3d 927, 933 (8th Cir. 2005). If the litigant loses an as-applied challenge because the law was not in fact applied, or the law did no work in authorizing the Government's challenged conduct, then courts should be careful to ensure that any remaining challenges are justiciable. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 569 (2011) (noting that, in *Los Angeles Police Department v. United Reporting Publishing Corp.*, 528 U.S. 32, 40–41 (1999), a facial challenge was unavailable because "the plaintiff had not suffered a personal First Amendment injury and could prevail only by invoking the rights of others").

On the other hand, there are situations where a failure on one claim might not preclude success on the other. If a litigant

19

loses an as-applied challenge because the allegedly unconstitutional circumstances of enforcement are simply "not supported by [the] record," *Heffner*, 745 F.3d at 65 n.7, and the litigant otherwise has standing to challenge a law (such as a defendant in an enforcement action), then "a court cannot simply refuse to address a facial challenge that offers a defendant her last chance to argue that the statute being enforced against her is constitutionally invalid." Fallon, *Fact and Fiction* at 963. And of course, a litigant who fails to prove that a law is unconstitutional in *all* applications might still prove that it was applied unconstitutionally to her. *Cf. Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305 (2016) (holding that losing earlier preenforcment facial challenge did not preclude postenforcement as-applied challenge).

A recent illustration of these principles is *Los Angeles v. Patel*, 135 S. Ct. 2443 (2015), where the Supreme Court approved of a standalone facial challenge arising under the Fourth Amendment. *Patel* involved an ordinance that authorized law enforcement officials to search hotel registries without an administrative warrant. Several hotel operators sued, claiming that the ordinance was facially invalid. In *Patel*, the challenged ordinance had been, and would have continued to be, applied against the hotels to authorize warrantless searches. The parties stipulated as much, satisfying the imminence requirement. *Id.* at 2448. Thus, the plaintiffs presented a dispute about whether their rights would be violated as a function of the ordinance's facial validity. Similarly, in our recent decision in *Free Speech Coalition*, the plaintiffs demonstrated an imminent risk that they would be subjected to an allegedly unconstitutional inspection regime.

20

825 F.3d at 166–67. Their rights likewise turned on the facial validity of the law in question.

Not so here. Knick makes no reasonable allegation that her Fourth Amendment rights (or anyone else's) were, or will imminently be, violated. The fact that Knick challenges the Ordinance on its face does not relieve her from that fundamental burden.

\* \* \*

We recognize that the Ordinance's inspection provision "is constitutionally suspect and we encourage the [Township] to abandon it (or, at least, to modify it substantially)." *Osediacz*, 414 F.3d at 143. It is difficult to imagine a broader authorization to conduct searches of privately owned property.[9] But we are not a "roving commission[] assigned to pass judgment on the validity of the Nation's laws." *Broadrick*, 413 U.S. at 611. We cannot adjudicate the merits of the inspection provision without a plaintiff who has a cognizable interest in the outcome. Accordingly, we will affirm the dismissal of Knick's remaining Fourth Amendment claim on the alternative ground that Knick lacks standing.

---

[9] Knick asserted before the District Court that the Ordinance was enacted in retaliation for her repeated confrontations with Township Supervisors over their management decisions. The District Court dismissed this retaliation claim, and Knick has not appealed that ruling.

21

IV

We turn then to Knick's Fifth Amendment takings claims. Knick argues that the Ordinance effectuates an uncompensated taking of her private property by requiring her to hold her land open to the public and to Township inspectors.

Before a takings claim is ripe, plaintiffs should (subject to certain exceptions) comply with two prudential requirements set forth in the Supreme Court's decision *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985). First, the "finality rule" requires that the government "has reached a final decision regarding the application of the regulation to the property at issue." *Id.* at 186. Second, the plaintiff must seek and be denied just compensation using the state's procedures, provided those procedures are adequate. *Id.* at 194.[10]

In this case, the Township argues that Knick failed to comply with the second *Williamson County* prong, exhaustion of state-law compensation remedies, because Knick did not

---

[10] As a general matter, "there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action." *Cty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 168 (3d Cir. 2006) (quoting *Williamson Cty.*, 473 U.S. at 192). *Williamson County*'s second prong therefore is not a "true" exhaustion requirement, but "merely addresses a unique aspect of Just Compensation Takings claims." *Id.*

22

pursue inverse-condemnation proceedings under Pennsylvania's Eminent Domain Code, 26 Pa. Cons. Stat. Ann. §§ 101 et seq. *See Cowell v. Palmer Twp.*, 263 F.3d 286, 291 (3d Cir. 2001) (holding that plaintiffs' takings claim was not ripe because they did not file an inverse-condemnation petition). Knick responds that she was not required to pursue inverse-condemnation proceedings for three reasons. First, Knick argues that her facial takings claim is exempt from exhaustion. Second, Knick argues that she did in fact comply with *Williamson County* by unsuccessfully suing for declaratory and injunctive relief in state court. And third, Knick argues that we should overlook *Williamson County*'s prudential requirements in the interest of efficiency. We reject all three arguments.

A

First, Knick argues that her facial takings claim need not be exhausted through state-court procedures. Specifically, Knick asserts that this Court wrongly decided *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159 (3d Cir. 2006), the case relied upon by the District Court, which required exhaustion for a similar facial claim. We cannot overrule our own precedent, but we nonetheless conclude that Knick's argument is misplaced.

There is no question that the first prong of *Williamson County*, the finality rule, does not apply to "a claim that the mere enactment of a regulation . . . constitutes a taking without just compensation." *Id.* at 164. That exception to the finality rule makes sense: if the mere enactment of the ordinance constitutes a taking, there would be no need to wait

23

for any "final decision." *See CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 626–27 (3d Cir. 2013).

The question before us is whether facial claims are also exempt from the second prong of *Williamson County*, the exhaustion of state-law compensation remedies. In *County Concrete*, this Court held that "a *facial* Just Compensation Takings claim . . . does not relieve [plaintiffs] from the duty to seek just compensation from the state." 442 F.3d at 168. The District Court correctly applied that holding here.

Knick argues, however, that our decision in *County Concrete* is contrary to Supreme Court authority. For example, in *San Remo Hotel, L.P. v. San Francisco*, the Supreme Court stated that the petitioners "have overstated the reach of *Williamson County* throughout this litigation" because the petitioners were "never required to ripen" their facial claims. 545 U.S. 323, 345 (2005). Similarly, in *Suitum v. Tahoe Regional Planning Agency*, the Supreme Court noted that facial challenges "are generally ripe the moment the challenged regulation or ordinance is passed." 520 U.S. 725, 736 n.10 (1997); *see also Yee v. City of Escondido*, 503 U.S. 519, 533–34 (1992).

We clarify that there is no conflict between these lines of authority and that *Williamson County*'s second prong is applicable to this case.

1

This "seeming inconsistency" in the law arises because the Supreme Court has used the word "facial" in two ways.

24

*Sinclair Oil Corp. v. Cty. of Santa Barbara*, 96 F.3d 401, 406 (9th Cir. 1996). First, the Supreme Court has referred to a type of taking as "facial"—where "the mere enactment of a statute constitutes a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987). Second, the Supreme Court has used the word "facial" to refer to a type of legal challenge that seeks to invalidate a taking rather than obtain just compensation. *See Yee*, 503 U.S. at 534 (describing a facial challenge as one that "does not depend on the extent to which petitioners are . . . compensated"). These two uses of the term "facial" are conceptually distinct.

Regarding the first use—"facial taking"—it is important to understand that the government does not violate the Fifth Amendment simply because one of its actions "constitutes a taking." *Bituminous Coal*, 480 U.S. at 494. The Fifth Amendment "does not prohibit the taking of private property, but instead places a condition on the exercise of that power": the provision of just compensation. *First English Evangelical Lutheran Church of Glendale v. Cty. of L.A.*, 482 U.S. 304, 314 (1987); *see Cty. Concrete*, 442 F.3d at 168 ("[T]he Fifth Amendment bars not just the taking of property, but the taking of property without just compensation." (internal quotation marks omitted)). Thus, "even if a zoning ordinance, on its face, 'takes' property for Fifth Amendment purposes, no constitutional violation occurs until the state refuses to justly compensate the property owner." *Sinclair Oil*, 96 F.3d at 406. Accordingly, a facial taking is not automatically unconstitutional; it simply "gives rise to an unqualified constitutional obligation to compensate" the property owner. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 320 (2002).

The second use—"facial challenge"—describes a type of claim, not a type of taking. A plaintiff who brings a facial challenge attacks the "underlying validity" of a law or regulation that allegedly effectuates a taking. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005). "No amount of compensation can authorize" a taking rooted in a facially invalid law. *Id.* When a party challenges the fundamental validity of a law, the claim turns on an issue that arises logically and temporally prior to the denial of compensation. As such, there is no reason to wait for compensation to be denied; the constitutional violation would occur at the moment the invalid statute or regulation becomes effective.

This distinction between the facial takings and facial challenges explains how our decision in *County Concrete* is fully compatible with the Supreme Court's statements in *San Remo Hotel*, *Suitum*, and *Yee*. Those Supreme Court cases each describe a facial challenge. *See, e.g.*, *San Remo Hotel*, 545 U.S. at 345–46 (noting that the plaintiffs "requested relief distinct from the provision of 'just compensation'"). The Court was discussing a now-defunct legal theory: the claim that "a general zoning law to particular property effects a taking if the ordinance does not substantially advance a legitimate state interest." *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980). That test is no longer good law after *Lingle*, but modern plaintiffs have other tools at their disposal to challenge the underlying validity of a taking. "[I]f a government action is found to be impermissible—for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action." *Lingle*, 544 U.S. at 543.

26

By contrast, the Fifth Amendment claim in *County Concrete* for which this Court required exhaustion was not a facial challenge. The taking occurred on the face of an ordinance, but the plaintiff merely sought compensation. That is why this Court emphasized that the claim at issue was "a *facial Just Compensation* Takings claim." *Cty. Concrete*, 442 F.3d at 168 (second and third emphases added). The plaintiff's true facial challenges to the law—for violating Substantive Due Process and the Equal Protection Clause—were not subject to exhaustion. *Id.* at 168–69; *see Sinclair Oil*, 96 F.3d at 406 (noting that the "seeming inconsistency" should be resolved "by analyzing the type of facial taking claim at issue in a particular case").[11]

---

[11] Knick further argues that *County Concrete* was overruled by *Horne v. Department of Agriculture*, which noted that "[a] 'Case' or 'Controversy' exists once the government has taken private property without paying for it" regardless of "whether an alternative remedy exists." 133 S. Ct. 2053, 2062 n.6 (2013). But there, the Supreme Court was discussing constitutional requirements under Article III, not prudential ripeness under *Williamson County*. *Horne* in fact reaffirmed that "a Fifth Amendment claim is premature until it is clear that the Government has both taken property *and* denied just compensation." *Id.* at 2062. The Court in *Horne* concluded that the takings claim was not premature, but only because the usual remedies had been withdrawn.

27

To summarize, a plaintiff may be excused from the first prong of *Williamson County* depending on the type of taking alleged. If the taking occurred through an exercise of discretion, the plaintiff must demonstrate that the government reached a final decision. *Williamson Cty.*, 473 U.S. at 186. But if the taking occurred on the face of a statute, ordinance, or regulation, that requirement does not apply. *Cty. Concrete*, 442 F.3d at 164–65. As for *Williamson County*'s second prong, the plaintiff may be excused from exhausting state-law remedies depending on the type of claim asserted and the form of relief appropriate for that claim. If the plaintiff's claim is based on a lack of compensation—i.e., the claim arises under the Just Compensation Clause—then the plaintiff must first seek compensation under state law (provided the state's procedures are adequate). *Id.* at 168. If instead the plaintiff challenges the underlying validity of the taking, perhaps for lacking a public purpose or for violating due process, then the denial of compensation is irrelevant to the existence of a ripe claim and *Williamson County*'s second prong is inapplicable. *Id.* at 168–69.

2

Despite their being characterized as facial challenges, Knick's claims are, unavoidably, claims for compensation. They are therefore subject to exhaustion under *Williamson County*.

Knick has not argued that remedies through inverse-condemnation proceedings are unavailable.

Knick does not claim that the alleged taking violates the Public Use Clause. Furthermore, the District Court dismissed the due-process claims asserted in Knick's original complaint, and Knick does not appeal that ruling. All that remains is the allegation that the Township violated the Fifth Amendment because it took Knick's property *without compensation*. As pled in the Second Amended Complaint:

> 36. The Ordinance requires private property owners to allow the general public to enter, traverse, and occupy their private land, *without compensation*, every day of the year. As such, on its face, the Ordinance causes an unconstitutional physical invasion and taking of private property.
>
> 37. The Ordinance also causes an unconstitutional physical taking on its face in authorizing the Township's "Code Enforcement Officer and/or his/her agents and representatives" to enter, traverse and occupy private property for the purpose of determining the "existence" of any cemetery, *without any provision of compensation* to the effected owners.
>
> . . .
>
> 42. As applied to Plaintiff, the Ordinance effects an *uncompensated* physical taking of her property by requiring Plaintiff to open her

> private property to the public, on pain of civil
> fines and penalties.

App. 263–64 (emphases added).

To be sure, Knick's Second Amended Complaint seeks injunctive relief. But Knick has no surviving claim that the *taking itself* was invalid, apart from the fact that she has not received compensation. The remedy for an uncompensated (but otherwise valid) taking is compensation.

Knick argues that invalidation of the Ordinance is still appropriate because the Ordinance does not provide a self-contained mechanism for compensating property owners. This argument is misplaced. "[T]he Fifth Amendment [does not] require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a reasonable, certain and adequate provision for obtaining compensation exist at the time of the taking." *Williamson Cty.*, 473 U.S. at 194 (internal quotation marks omitted). That provision here is inverse-condemnation proceedings under Pennsylvania's Eminent Domain Code.

Accordingly, we conclude that Knick's claims arise under the Just Compensation Clause subject to exhaustion under *Williamson County* and must therefore be exhausted using inverse-condemnation proceedings.

B

Second, Knick argues that she exhausted state-law remedies because she sued unsuccessfully in state court. We disagree.

30

The Eminent Domain Code provides the "complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages." 26 Pa. Cons. Stat. Ann. § 102(a). Knick did not pursue the "complete and exclusive procedure" to obtain compensation, *id.*, and therefore failed to ripen her claims, *see Cowell*, 263 F.3d at 291.

Knick's state-court action only sought declaratory and injunctive relief, not compensation. As such, Knick could not have "been denied compensation" as part of that action. *Williamson Cty.*, 473 U.S. at 195; *see Bd. of Supervisors of Shenango Twp. v. McClimans*, 597 A.2d 738, 742 n.5 (Pa. Commw. Ct. 1991) ("[A]ny claim for monetary damages is not properly before this Court and must be pursued under the provisions of the Eminent Domain Code."). Furthermore, the claims for injunctive relief presented to the state court (such as Knick's due-process challenge) are no longer before us. Even if they were, they would not be subject to *Williamson County* exhaustion. *Cty. Concrete*, 442 F.3d at 168–69.[12]

---

[12] Knick also argues that her state-court action was proper under *Weinberg v. Comcast Cablevision of Phila., L.P.*, 759 A.2d 395 (Pa. Super. Ct. 2000). But in that case, the plaintiff claimed that a legislative act stripped access to the "elaborate procedures" in the Eminent Domain Code for assessment of damages. *Id.* at 400. Knick has not alleged that inverse-condemnation remedies are unavailable here.

Accordingly, we conclude that Knick's earlier state lawsuit did not constitute exhaustion of state-law compensation remedies for purposes of *Williamson County*'s second prong.

## C

Finally, Knick argues that *Williamson County* is a prudential doctrine, and we may therefore overlook it in appropriate cases. We decline to do so here.

Knick's initial premise is correct: *Williamson County's* requirements are prudential. *See Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013). But "merely because exhaustion requirements are prudential does not mean that they are without teeth. Even prudential exhaustion requirements will be excused in only a narrow set of circumstances." *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007).

Several of our sister circuits have declined to enforce *Williamson County*'s requirements based on the equities presented in individual cases. Knick relies primarily on *Sansotta v. Town of Nags Head*, 724 F.3d 533, 545 (4th Cir. 2013), and its companion case *Town of Nags Head v. Toloczko*, 728 F.3d 391 (4th Cir. 2013). In *Sansotta*, the Fourth Circuit overlooked *Williamson County* because the defendant removed the action to federal court, thwarting the plaintiff's effort to exhaust. The defendant's "manipulation" provided strong equitable reasons to overlook exhaustion. *Sansotta*, 724 F.3d at 545; *see also Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). In *Toloczko*, the property owner was a *defendant* in an action brought by the

state to compel the demolition of their property. The property owners removed the action to federal court, and only then asserted counterclaims under the Takings Clause. The Fourth Circuit noted that, if the owner was required to go back to state court, they would have been subjected to "piecemeal litigation" in two forums at once. 728 F.3d at 399 (quoting *San Remo Hotel*, 545 U.S. at 346); *see also Horne*, 133 S. Ct. at 2063–64 (holding that petitioners could raise a takings defense in an enforcement action).

For another example, the Ninth Circuit declined to enforce *Williamson County* in *Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010) (en banc). First, the Court rejected the claim on the merits, "so it would be a waste of the parties' and the courts' resources to bounce the case through more rounds of litigation." *Id.* at 1118. Second, the Court noted that "the law changed after their trip to state court," and "it is hard to see any value in forcing a second trip on them." *Id.*

Knick does not argue that inverse-condemnation proceedings would be unavailable or futile. Instead, she argues that allowing her claims to proceed would be more efficient and would avoid piecemeal litigation. But because Knick's Just Compensation Clause claims are all that remain in the case, there is no risk of piecemeal litigation comparable to *Toloczko*. Nor has Knick identified any exceptional circumstance—such as the Township thwarting her access to inverse-condemnation proceedings as in *Sansotta*, or a change in applicable law after state-court proceedings concluded as in *Guggenheim*. Even if it were more efficient to allow Knick's claims to proceed, that would be true in *any* case

where a litigant asks a court to waive her failure to meet a prudential requirement.

Finally, the Ninth Circuit declined to enforce *Williamson County* because it was more efficient to simply reject the property owner's claims on the merits. *Guggenheim*, 638 F.3d at 1118; *see also MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1130 (9th Cir. 2013). While we do not rule on the merits here, we note that Knick's claims do not suffer from any obvious infirmities that would tempt us to follow the Ninth Circuit's example. Knick relies on a straightforward application of the Supreme Court's decision in *Nollan v. California Coastal Commission*, which found it "obvious" that an easement for public access across private property constituted a permanent physical taking. 483 U.S. 825, 831 (1987); *see also Kaiser Aetna v. United States*, 444 U.S. 164, 180 (1979). The fact that the Ordinance only mandates public access during daylight hours does not change the fact that land must be accessible every day, indefinitely. *See Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 519 (2012) (noting that, in *United States v. Cress*, 243 U.S. 316 (1917), "'inevitably recurring'" flooding created a permanent condition on the land, which "gave rise to a takings claim no less valid than the claim of an owner whose land was continuously kept under water"); *Hendler v. United States*, 952 F.2d 1364, 1377 (Fed. Cir. 1991) ("[T]he concept of permanent physical occupation does not require that in every instance the occupation be exclusive, or continuous and uninterrupted.").

In sum, even prudential requirements should not be lightly cast aside. We think there is "value in forcing a second trip"

34

to state court here. *Guggenheim*, 638 F.3d at 1118. The Commonwealth's inverse-condemnation mechanism is better equipped to value Knick's land than the federal courts, and litigants must be incentivized to pursue relief through proper channels. Accordingly, we will affirm the District Court's order dismissing the takings claims without prejudice pending exhaustion of state-law compensation remedies.

V

For the foregoing reasons, we will affirm the judgment of the District Court.